912 So.2d 550 (2005)
Michael Ray CLINES, Petitioner,
v.
STATE of Florida, Respondent.
No. SC04-1882.
Supreme Court of Florida.
July 7, 2005.
Rehearing Denied September 29, 2005.
*552 Nancy A. Daniels, Public Defender and P. Douglas Brinkmeyer, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Robert R. Wheeler, Bureau Chief, Criminal Appeals, and Trisha Meggs Pate, Assistant Attorney General, Tallahassee, FL, for Respondent.
CANTERO, J.
We review Clines v. State, 881 So.2d 721 (Fla. 1st DCA 2004), which certified conflict with Works v. State, 814 So.2d 1198 (Fla. 2d DCA 2002), and Oberst v. State, 796 So.2d 1263 (Fla. 4th DCA 2001). The issue on which they disagree is whether the recidivist sentencing statute allows a court to sentence a defendant as both a habitual felony offender and a violent career criminal. In the case we review, the First District held that it does, see Clines, 881 So.2d at 722, while the conflicting courts held it does not. Works, 814 So.2d at 1199; Oberst, 796 So.2d at 1265. We have jurisdiction to resolve the certified conflict, see art. V, § 3(b)(4), Fla. Const., and granted review. See Clines v. State, *553 890 So.2d 1114, 1114 (Fla.2005) (granting review). We conclude that the statute is ambiguous about whether a defendant may be sentenced under more than one of its recidivist categories. Therefore, we apply the rule of lenity and hold that the statute does not permit a court to sentence a defendant under multiple categories for a single crime. Because of our resolution of this issue, we need not consider whether sentencing a defendant under more than one category would violate double jeopardy protections.

I. THE STATUTE
The defendant, Michael Ray Clines, was sentenced under Florida's recidivist sentencing statute. That statute, section 775.084, Florida Statutes (2002), establishes four categories of recidivists whose sentences may be enhanced. They are, in order of increasing punishment, habitual felony offenders, habitual violent felony offenders, three-time violent felony offenders, and violent career criminals. § 775.084(1), Fla. Stat. (2002). These categories have different but overlapping definitions. To be sentenced as a habitual felony offender, a defendant must have two prior felony convictions and must have committed his current felony within a certain time frame: either (a) while serving a prison sentence or while under supervision as the result of one of the prior convictions that qualified him for this category, or (b) within five years of his last conviction, prison release, or release from supervision attributable to one of those qualifying convictions. § 775.084(1)(a), Fla. Stat. (2002).[1] To be sentenced as a habitual violent felony offender, a defendant must have been convicted of one prior enumerated felony and must have committed his current felony within the above time frame. § 775.084(1)(b), Fla. Stat. (2002). To be sentenced as a three-time violent felony offender, a defendant must have been convicted twice as an adult of certain violent felonies (listed in the statute) and must have committed another such offense within the above time frame. § 775.084(1)(c), Fla. Stat. (2002). Finally, to be sentenced as a violent career criminal, a defendant must have been previously incarcerated in state or federal prison, must have been convicted three times as an adult of certain violent felonies (listed in the statute), and must have committed another such offense within the above time frame. § 775.084(1)(d), Fla. Stat. (2002).
Recidivists within these categories are subject to enhanced punishment, which generally increases with each category. The two habitual offender categories are permissive; such offenders "may" be sentenced more harshly than otherwise. § 775.084(4)(a)-(b), Fla. Stat. (2002). The other two categories are mandatory. Three-time violent felony offenders "must" be sentenced to mandatory minimum terms. § 775.084(4)(c), Fla. Stat. (2002). Violent career criminals "shall" be sentenced to lengthy minimum terms and may also be sentenced to even longer maximum terms, with no eligibility for discretionary early release. § 775.084(4)(d), (4)(k)2., Fla. Stat. (2002). The following table summarizes the specific punishments authorized by each category:

*554
 3rd-Degree 2nd-Degree 1st-Degree
 Felonies Felonies Felonies Life Felonies
------------------------------------------------------------------------------------
Habitual Up to 10 years Up to 30 years Life Life
Felony imprisonment imprisonment
Offenders
------------------------------------------------------------------------------------
Habitual Up to 10 years; Up to 30 years; Life Life
Violent not eligible for not eligible for imprisonment; imprisonment;
Felony release for 5 release for 10 not eligible for not eligible for
Offenders years years release for 15 release for 15
 years years
------------------------------------------------------------------------------------
Three-Time Mandatory Mandatory Mandatory Mandatory
Violent minimum of 5 minimum of 15 minimum of 30 minimum of life
Offenders years years years imprisonment
------------------------------------------------------------------------------------
Violent Up to 15 years, Up to 40 years, Life imprisonment; Life
Career with a mandatory with a mandatory no imprisonment;
Criminals minimum minimum discretionary no discretionary
 of 10 years of 30 years early release early
 release

See § 775.084(4)(a)-(k), Fla. Stat. (2002).
Because of the substantial overlap among the four recidivist categories, a defendant may meet the criteria of more than one category. For instance, a violent career criminal (one who has been convicted three times as an adult of certain violent felonies, and committed another such offense within the specified time frame) will always be a habitual felony offender (because he will have two prior felony convictions and will have committed his current felony within the same time frame). Compare § 775.084(1)(a), Fla. Stat. (2002), with § 775.084(1)(d), Fla. Stat. (2002).

II. PROCEEDINGS BELOW
Clines was charged with resisting arrest with violence, grand theft, and two counts of battery on a law enforcement officer. The State filed notices of its intent to seek both habitual felony offender sentencing and violent career criminal sentencing under section 775.084. Clines later pled nolo contendere to the resisting arrest and grand theft charges, while the State dropped the two counts of battery on a law enforcement officer. The punishment was left for the trial court to determine.
At the sentencing hearing, the State introduced evidence showing that Clines qualified as a habitual felony offender and a violent career criminal. The trial court applied both designations. As to the resisting arrest charge, having designated Clines a habitual felony offender, the court sentenced him to ten years in prison; and having designated him a violent career criminal, the court imposed a ten-year mandatory minimum term.[2] Clines later filed a motion to correct a sentencing error under Florida Rule of Criminal Procedure 3.800(b)(2), arguing that he could not be designated as both a habitual felony offender and a violent career criminal. The trial court denied the motion as facially insufficient.
On appeal, Clines argued that his dual designation violated double jeopardy protections and conflicted with the Legislature's intent in adopting the recidivist sentencing statute. The First District affirmed, concluding that dual designation "violates neither double jeopardy protections nor legislative intent." Clines, 881 *555 So.2d at 722. According to the First District, "the entire statutory scheme of section 775.084 readily contemplates, in the case of a single criminal charge, a sentence under the habitual felony offender provision, with the mandatory minimum term provisions provided for by the violent career criminal designation." Id. at 724. The First District certified conflict, however, with the Second District's decision in Works, 814 So.2d at 1199, and the Fourth District's decision in Oberst, 796 So.2d at 1265, both of which interpreted section 775.084 to prohibit the sentencing of a defendant under more than one recidivist category. Clines, 881 So.2d at 724. Clines now asks us to resolve the conflict.[3]

III. ANALYSIS
Clines argues that the trial court violated section 775.084 by sentencing him as both a violent career criminal and a habitual felony offender. According to Clines, the statute permits the court to sentence under only one category. The State responds that the Legislature intended to allow sentencing under multiple categories. The disputed provision is subsection (4)(f), which states:
At any time when it appears to the court that the defendant is eligible for sentencing under this [recidivist sentencing] section, the court shall make that determination as provided in paragraph (3)(a), paragraph (3)(b), or paragraph (3)(c).
§ 775.084(4)(f), Fla. Stat. (2002) (emphasis added). The cross-referenced paragraphs cover different recidivist categories. Each provides that "[i]n a separate proceeding, the court shall determine" whether the defendant qualifies for designation within that category. § 775.084(3)(a), (3)(b), (3)(c), Fla. Stat. (2002).
The parties disagree about whether the "or" in subsection (4)(f) is disjunctive or conjunctive. If disjunctive, as Clines advocates, then trial courts may sentence defendants under only one category. But if the "or" is conjunctive, as the State proposes, defendants may be sentenced under multiple categories. The question is one of statutory interpretation, which we review de novo. See B.Y. v. Dep't of Child. & Fams., 887 So.2d 1253, 1255 (Fla.2004) ("The standard of appellate review on issues involving the interpretation of statutes is de novo.").
In the analysis that follows, we (A) analyze the statute's plain meaning, (B) analyze the broader statutory structure, and finally (C) explain why the rule of lenity dictates that a defendant may be sentenced under only one of section 775.084's recidivist categories.

A. Plain Meaning
We begin with the statute's plain meaning. We have "repeatedly held that the plain meaning of statutory language is the first consideration of statutory construction." Stoletz v. State, 875 So.2d 572, 575 (Fla.2004) (citing State v. Bradford, 787 So.2d 811, 817 (Fla.2001)). Sometimes it is also the final one. "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its *556 plain and obvious meaning." A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931), quoted in Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). This is not one of those times, however. As we explain below, subsection (4)(f) is sufficiently ambiguous to warrant deeper scrutiny.
Clines argues that "the Legislature plainly, by the use of the term `or,' has expressed its intent that one may not be sentenced as [a habitual offender] and a [violent career criminal] under the statute." Brief of Pet'r on the Merits at 9.[4] The Fourth District reached that very conclusion in Oberst, where it held that subsection (4)(f)'s plain meaning "reflects a legislative intent to require the court to designate a defendant as either a [habitual felony offender] or a three-time violent felony offender or a [violent career criminal], but not any combination." 796 So.2d at 1265. The Second District later endorsed the Fourth District's analysis. Works, 814 So.2d at 1199.
In contrast, the State argues that the "or" in subsection (4)(f) has a plainly conjunctive meaning. The First District reached that conclusion in its decision below, explaining:
Here, the Legislature had little choice but to use the disjunctive [to express its conjunctive meaning]. Had the Legislature used the conjunctive `and,' the statute would have been hopelessly confusing and would have suggested that the trial court must make all three sentencing determinations, a situation that would be impossible on the facts of many cases.
Clines, 881 So.2d at 723. We find this explanation unpersuasive. In fact, it would be a rare circumstance for the word "or" to have the plain meaning "and." In this case, if the Legislature had been aware of the grammatical dilemma and had wanted to make its conjunctive meaning clear, it would not have relied on the typically disjunctive word "or" to do so. Instead, the Legislature would have added an explicitly clarifying phrase, such as "or any combination thereof," to the end of the sentence. That it did not evidences that the Legislature either (a) intended a disjunctive meaning, or (b) simply did not anticipate the grammatical dilemma that this case raises. We doubt that the latter is true, because the dilemma is so readily apparent.
We cannot be sure from the plain meaning of the word "or" whether the Legislature intended a disjunctive meaning. We have long recognized that the word "or," when used in a Florida statute, is "generally to be construed in the disjunctive." Telophase Soc'y of Fla., Inc. v. State Bd. of Funeral Dirs. & Embalmers, 334 So.2d 563, 566 (Fla.1976); see also Pompano Horse Club v. State, 93 Fla. 415, 111 So. 801, 805 (1927) ("In its elementary sense the word `or' is a disjunctive particle that marks an alternative, generally corresponding to `either,' as `either this or that'. . . ."). But we also have recognized some situations "in which the conjunction `or' is held equivalent in meaning to the *557 copulative conjunction `and.'" Id. at 805 Nevertheless, we have favored a disjunctive reading. "[T]he word `or' is usually, if not always, construed judicially as a disjunctive unless it becomes necessary in order to conform to the clear intention of the Legislature to construe it conjunctively as meaning `and.'" Id. (emphasis added); see also State v. Keaton, 371 So.2d 86, 89 (Fla.1979) ("Our courts have engaged in [a conjunctive] interpretation only when necessary to effectuate the clear intent of the legislature. . . ."). To determine whether the Legislature clearly intended the "or" to be conjunctive, we must examine the provision within the statute's broader structure.

B. The Statutory Structure
We have recognized as "axiomatic" the principle that "all parts of a statute must be read together in order to achieve a consistent whole." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992) (emphasis omitted). When possible, we "must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." Id. (emphasis omitted). According to the State, the only way to harmonize subsection (4)(f) with the rest of the statute would be to construe the word "or" conjunctively. The State makes four arguments to this effect. We disagree with all of them. As we explain below, a disjunctive reading would be equally harmonizing, and more faithful to the usual meaning of the word "or."
The State's first argument is that various provisions in the recidivist sentencing statute reveal the Legislature's obvious intent to punish career criminals with the most severe sanction possible. The State emphasizes two provisions: one expressly stating that the Legislature's intent in enacting these provisions was "to incarcerate [recidivists] for extended terms," § 775.0841, Fla. Stat. (2002); and another demanding that "[a]ll reasonable prosecutorial efforts shall be made to persuade the court to impose the most severe sanction authorized upon a person convicted after prosecution as a career criminal." § 775.0843(2)(d), Fla. Stat. (2002).
We see nothing in these two provisions that clarifies whether multiple recidivist categories may be applied to a single criminal sentence. The provisions speak generally of "extended terms" and "severe sanction[s]," but do not direct the severity of the punishment when more than one recidivist category applies. The Legislature has ordered prosecutors to pursue "the most severe sanction authorized"  not the most severe sanction possible, as the State suggests. Whether a sentence imposed under multiple recidivist categories is, in fact, authorized by section 775.084 is unclear from these general statements of legislative intent. Moreover, designation of a defendant under more than one category would not necessarily increase the severity of a sentence. For example, a defendant who commits a third-degree felony and is designated as both a habitual felony offender and a habitual violent felony offender is subject to ten years' imprisonment as a habitual felony offender; but he is already subject to the same term as a habitual violent felony offender, with a minimum five-year term. Similarly, a defendant sentenced as both a habitual felony offender and a violent career criminal receives no greater punishment than if he were sentenced solely as a violent career criminal. Therefore, designation within more than one category does not always (or even often) result in greater punishment.
The State's second argument is that subsection (4)(f) incorporates by reference three other provisions in the statute that require trial courts to consider all *558 applicable recidivist categories. Therefore, the State reasons, the Legislature must have intended for defendants to be sentenced under all categories that apply. As we explained earlier, subsection (4)(f) directs that "the court shall make that [recidivist sentencing] determination as provided in paragraph (3)(a), paragraph (3)(b), or paragraph (3)(c)." Those cross-referenced paragraphs provide, respectively, that "[i]n a separate proceeding, the court shall determine if the defendant is a habitual felony offender or a habitual violent felony offender," § 775.084(3)(a), Fla. Stat. (2002); that "[i]n a separate proceeding, the court shall determine if the defendant is a three-time violent felony offender," § 775.084(3)(b), Fla. Stat. (2002); and that "[i]n a separate proceeding, the court shall determine whether the defendant is a violent career criminal." § 775.084(3)(c), Fla. Stat. (2002).
The State quotes the First District's conclusion that "[s]ubsection (4)(f). . . merely reiterates the requirements of subsections (3)(a), (b), and (c), each of which directs the court to conduct separate proceedings" to determine if a given recidivist category applies. Clines, 881 So.2d at 724. This reading is certainly reasonable, but it renders subsection (4)(f) superfluous. We traditionally have sought to avoid a redundant interpretation unless the statute clearly demands it. See Fla. Dep't of Revenue v. Fla. Mun. Power Agency, 789 So.2d 320, 324 (Fla.2001) ("A court's function is to interpret statutes as they are written and give effect to each word in the statute."). We have no difficulty avoiding redundancy in this case. Subsection (4)(f) obtains meaning when interpreted not as a mere reiteration, but as an instruction that explains how to apply the three cited provisions. On this reading, subsection (4)(f) clarifies that, although the trial court may need to hold multiple "separate proceedings" under subsections (3)(a), (3)(b), and (3)(c) in order to determine which recidivist categories apply, it can only sentence a defendant under a single category. When a defendant qualifies for more than one category, the Legislature has expressed its desire for "the court to impose the most severe sanction authorized," § 775.0843(2)(d), Fla. Stat. (2002), which in turn promotes the Legislature's goal of "uniform punishment" of similarly situated defendants. § 775.084(6), Fla. Stat. (2002). We note, however, that the statute does have a safety valve. A trial court may depart from the sentence required for a habitual felony offender, habitual violent felony offender, or violent career criminal, provided that it explains in writing why "such sentence is not necessary for the protection of the public." § 775.084(3)(a)6., (3)(c)5., (4)(e), Fla. Stat. (2002).
The State's third argument is that subsection (4)(f) must be interpreted to allow application of multiple categories because two of the categories  the three-time violent felony offender category and the violent career criminal category  are phrased in mandatory language. The statute provides that "the court . . . must sentence the three-time violent felony offender to a mandatory minimum term of imprisonment," § 775.084(4)(c)1., Fla. Stat. (2002) (emphasis added); and that "the court . . . shall sentence the violent career criminal" to certain mandatory minimum terms. § 775.084(4)(d), Fla. Stat. (2002) (emphasis added). In contrast, the other two categories are permissive. § 775.084(4)(a)-(b), Fla. Stat. (2002) (stating that the court "may sentence" habitual offenders more harshly).
A comparison of the two mandatory categories reveals, however, that regardless of how one interprets subsection (4)(f), they cannot be simultaneously applied to the same sentence. The punishment *559 required by the violent career criminal category always eclipses the punishment required by the three-time violent felony offender category. For example, for third-degree felonies, violent career criminals must be sentenced to "a term of years not exceeding 15, with a mandatory minimum term of 10 years' imprisonment," § 775.084(4)(d)3., Fla. Stat. (2002), whereas three-time violent felony offenders need only be sentenced to a lesser mandatory minimum of five years in prison. § 775.084(4)(c)1.d., Fla. Stat. (2002). For second-degree felonies, violent career criminals must be sentenced to "a term of years not exceeding 40, with a mandatory minimum term of 30 years' imprisonment," § 775.084(4)(d)2., Fla. Stat. (2002), whereas three-time violent felony offenders need only be sentenced to a lesser mandatory minimum of 15 years. § 775.084(4)(c)1.c., Fla. Stat. (2002). For first-degree felonies, violent career criminals must be sentenced "for life" without eligibility for discretionary early release, § 775.084(4)(d)1., 4(k), Fla. Stat. (2002), whereas three-time violent felony offenders need only be sentenced to a mandatory minimum of 30 years. § 775.084(4)(c)1.b., Fla. Stat. (2002). Finally, for life felonies, both violent career criminals and three-time violent felony offenders must be sentenced to life imprisonment without eligibility for early release. § 775.084(4)(d)1., (c)(1)a., (k)2., Fla. Stat. (2002). In each case, designating a defendant as a violent career criminal renders moot any designation as a three-time violent felony offender.[5] Thus, the mere existence of two mandatory categories does not evidence a legislative intent to allow multiple categories to be simultaneously applied.
The State's final argument is cumulative: that even if none of the preceding arguments is independently persuasive, together they clearly indicate that the Legislature intended for the violent career criminal category and the habitual felony offender category to be applied in combination. The First District expressed this view as follows: "[T]he entire statutory scheme of section 775.084 readily contemplates, in the case of a single criminal charge, a sentence under the habitual felony offender provision, with the mandatory minimum term provisions provided for by the violent career criminal designation.'" Clines, 881 So.2d at 724.
We disagree. We believe that the recidivist categories are designed to be hierarchical, not complementary. As we mentioned earlier, anyone whose pattern of recidivism meets the stringent requirements for designation as a violent career criminal will also qualify for designation as a habitual felony offender. Compare § 775.084(1)(d), Fla. Stat. (2002), with § 775.084(1)(a), Fla. Stat. (2002). But designation as a violent career criminal renders superfluous any other designation. The punishments required for violent career *560 criminals are always as harsh as, or harsher than, the punishments permitted under other categories. In fact, the mandatory minimum prison term for a violent career criminal in Clines's position is as long as the maximum prison term for a habitual felony offender. Compare § 775.084(4)(d), Fla. Stat. (2002), with § 775.084(4)(a), Fla. Stat. (2002). We doubt the Legislature intended a trial court to apply both categories when one encompasses the other.

C. Rule of Lenity
Based on the above analysis, we conclude that section 775.084 is ambiguous about whether multiple recidivist categories may be applied to a single criminal sentence. Although the Legislature certainly intended for recidivists to be sentenced "for extended terms," § 775.0841, Fla. Stat. (2002), there is no clear evidence that the Legislature intended for sentences to be extended under multiple recidivist categories, only one of which ultimately matters. The evidence to the contrary is stronger.
We therefore apply the rule of lenity. Florida has codified the rule as follows: "The provisions of this [criminal] code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused." § 775.021(1), Fla. Stat. (2002). We have explained that the rule "is applicable to sentencing provisions" if they "create ambiguity or generate differing reasonable constructions." Nettles v. State, 850 So.2d 487, 494 (Fla.2003). Because section 775.084 generates differing reasonable constructions, we endorse the construction that favors the defendant and hold that only one recidivist category in section 775.084 may be applied to any given criminal sentence.

IV. CONCLUSION
We hold that subsection 775.084 permits the application of only one recidivist category to the defendant's sentence. Our resolution of this issue renders moot any double jeopardy concerns associated with a contrary interpretation. We therefore quash the First District's decision in this case and remand to the trial court for resentencing in light of our ruling. We note that the original sentence given to Clines for resisting arresta ten-year term of imprisonment with a ten-year mandatory minimumwould be authorized on remand by the violent career criminal category alone. See § 775.084(4)(d)3., Fla. Stat. (2002).
It is so ordered.
PARIENTE, C.J., and ANSTEAD, LEWIS, QUINCE and BELL, JJ., concur.
WELLS, J., concurs specially with an opinion.
WELLS, J., concurring specially.
I find there to be a very close question here as to whether the rule of lenity should apply. I believe that section 775.084(4)(f), Florida Statutes, can be reasonably read unambiguously to mean that the Court shall make its determination in accord with any of the three paragraphs that apply. When read with the entire statute, I do not read the word "or" in section (4)(f) to be a limiting word, meaning (a), (b), or (c) to the exclusion of the other. However, in view of the majority of this Court and two of the district courts determining that there is an ambiguity, I do not dissent to the majority's conclusion.
In view of the majority's decision in the case, I have an additional concern that the majority opinion not be read as deciding that this decision be applied to motions pursuant to Florida Rule of Criminal Procedure *561 3.800(a). I do specifically point out that the present case and the Second District Court of Appeal's decision in Works v. State, 814 So.2d 1198 (Fla. 2d DCA 2002), involved motions pursuant to Florida Rule of Criminal Procedure 3.800(b); the decision of the Fourth District Court of Appeal in Oberst v. State, 796 So.2d 1263 (Fla. 4th DCA 2001), involved a direct appeal. Therefore, the issue here is not whether there can be relief pursuant to Florida Rule of Criminal Procedure 3.800(a). That issue is not decided in this case.
NOTES
[1] For a conviction to be counted toward any of the categories in section 775.084, it must not have been pardoned or set aside. See § 775.084(1)(a)-(d), Fla. Stat. (2002). Also, the conviction must have been "sentenced separately prior to the current offense and sentenced separately from any other felony conviction that is to be counted as a prior felony." § 775.084(5), Fla. Stat. (2002).
[2] On the grand theft charge, Clines received a concurrent five-year sentence.
[3] Clines also asks us to review whether his sentence complies with the Sixth Amendment right to trial by jury, as recently interpreted by the United States Supreme Court in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). When reviewing issues certified to be in conflict, we have the discretion to review other issues as well. See State v. Hubbard, 751 So.2d 552, 565 n. 30 (Fla.1999). We decline to consider Clines's Sixth Amendment claim, however, which he did not raise in the district court. We limit our review to the certified conflict.
[4] Clines also argues that this case is controlled by Grant v. State, 770 So.2d 655, 658 (Fla.2000), in which we held that a defendant cannot be sentenced as both a habitual felony offender and a prison releasee reoffender (PRR) for the same crime unless the habitual offender sentence would be longer than the PRR sentence. But Grant is not controlling here. The holding in Grant was a straightforward interpretation of section 775.082(8)(c), Florida Statutes (1997), which provided that "[n]othing in this [PRR sentencing] subsection shall prevent a court from imposing a greater sentence of incarceration . . . pursuant to s. 775.084 [the recidivist sentencing statute], or any other provision of law." This case does not involve section 775.082(8)(c).
[5] We recognize that violent career criminals are eligible for gain-time, whereas three-time violent felony offenders are not. § 775.084(4)(k)1., Fla. Stat. (2002). But this distinction is immaterial to our analysis because of certain limitations in the gain-time statute. First, the statute prohibits the use of gain-time to reduce life sentences. See § 944.275(4)(b)3., Fla. Stat. (2002). Thus, gain-time is of no avail to violent career criminals who commit life or first-degree felonies and receive the mandatory life sentence. Second, the statute requires prisoners to serve at least 85 percent of their sentences. Id. Thus, even assuming that gain-time could be used to reduce the mandatory minimums of violent career criminals who commit second-or third-degree feloniesan issue we do not address in this casethey would still serve more time than three-time violent felony offenders.