# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-2872

_____

TERRENCE BOATMAN,

    Appellant,

    v.

THOMAS "TOMMY" HARDEE, in
his official capacity as the
Supervisor of Elections for
Madison County, Florida and
SUSIE BISHOP WILLIAMSON, an
individual and candidate for the
office of member of the School
Board of Madison County,
Florida, for District 1,

    Appellees.

_____

On appeal from the Circuit Court for Madison County.
Andrew J. Decker, III, Judge.

August 23, 2018

WOLF, J.

Appellant, Terrence Boatman, challenges an emergency declaratory judgment finding he did not properly qualify as a candidate for election to the school board in Madison County because he paid his qualifying fee using a cashier's check purchased with funds from his campaign account rather than a

check drawn upon his campaign account. We find section 105.031(5)(a)1., Florida Statutes (2017), is unambiguous and required a check drawn upon his campaign account. Thus, we affirm.

FACTS

Appellee Thomas "Tommy" Hardee, who is the Supervisor of Elections for Madison County, filed a complaint for emergency declaratory relief against appellant and Susie Bishop Williamson, both of whom sought to run for the office of member of the School Board of Madison County. The supervisor sought a declaratory judgment as to whether appellant's decision to pay his qualifying fee using a cashier's check disqualified him because it did not meet the statutory requirement of a "check drawn upon the candidate's campaign account." § 105.031(5)(a)1., Fla. Stat. The supervisor attached a copy of the check:



The trial court conducted an evidentiary hearing. Appellant testified he purchased the cashier's check with funds drawn from his campaign account. He did so because his campaign account was relatively new and he did not want to pay with a "starter check." He turned in the cashier's check with his qualifying papers several days before the filing deadline because he was going on a cruise. He stated he was given a "high degree of certainty" by the deputy supervisor of elections who accepted his papers that he had met all of the requirements.

While appellant was on the cruise, the supervisor of elections notified appellant that he needed to submit a check from the

campaign account. However, appellant stated that was not possible because he was the only person designated to write checks on the campaign account. At the supervisor's request, appellant had someone submit a personal check, though appellant knew that would not be sufficient. Thereafter, appellant's status on the supervisor of elections' website briefly reflected that he was "qualified," but then his status changed back to "filed." The supervisor of elections told appellant he changed the status because he never should have qualified him as a candidate. When appellant returned from the trip, the qualifying period had ended. Regardless, at the supervisor's request, he brought a check from the campaign account.

The supervisor submitted into evidence an affidavit from the deputy supervisor who accepted appellant's qualifying papers. She stated she "briefly reviewed" appellant's papers when she time-stamped them. Appellant stated he was going on vacation and asked "if there was anything else that he needed to turn in for qualifying." She responded, "no."

The supervisor's counsel agreed that appellant did everything he needed to do to qualify except submit a check from the campaign account. He did not dispute appellant's claim that he purchased the cashier's check with funds from the campaign account. However, the supervisor argued appellant did not satisfy section 105.031(5)(a)1., Florida Statutes, which requires a candidate for the school board to submit a "check drawn upon the candidate's campaign account," and only permits the candidate to use a cashier's check "[i]f a candidate's check is returned by the bank for any reason," which was not the case here. Because the statute set a bright line rule for paying the filing fee, he argued strict compliance was required.

Appellant conceded a "cashier's check, by definition, is a check drawn on bank funds," not upon his campaign account. However, he argued that because he purchased the cashier's check with funds from the campaign account, the check was technically funded through his campaign account. He further reasoned that if a cashier's check was an acceptable form of payment after a candidate issued a bad check that was returned

3

by the bank, a cashier's check should be an acceptable form of payment at the outset.

The trial court orally found appellant failed to qualify because strict compliance with the statute was required, noting this statute was based on the need to keep a clear paper trail for contributions and expenditures of campaign funds.

The trial court entered a final declaratory judgment finding appellant failed to qualify as a candidate. The court made factual findings consistent with appellant's testimony, including that the cashier's check was purchased with funds from the campaign account, and that the deputy supervisor told him he did not need to turn in anything else to qualify. Regardless, the court found the qualifying fee was an express statutory requirement, not a mere technical requirement; thus, "substantial compliance" was not enough. The court also found responsibility to comply with the qualifying requirements lies with the candidate, not the supervisor of elections. A cashier's check by definition is drawn from the bank's funds. Thus, it does not meet the requirement of a check drawn upon the campaign account. As such, the court found appellant failed to qualify and instructed that appellant's name not appear on the ballot for the primary race to be conducted on August 28, 2018.

ANALYSIS

Appellant argues section 105.031(5)(a)1. is ambiguous as to whether a candidate may submit a cashier's check without first submitting a check drawn upon the campaign account. Thus, he asserts his cashier's check substantially complied with the statute, and the trial court's interpretation of the statute requiring hypersensitive compliance led to an absurd result. He also argues that barriers to qualification should be construed in favor of ballot access, and he reasonably relied on the deputy supervisor's assurance that his application was sufficient. The supervisor of elections disagrees and also argues the trial court correctly found that a cashier's check is not a check drawn upon the campaign account.

We find the statute is unambiguous and its plain language should be applied here. Thus, we affirm and specifically address

4

appellant's arguments regarding the doctrines of substantial compliance and absurd result.

## *I. Pertinent Statutes*

Questions of statutory interpretation are subject to de novo review. *Borden v. E.-European Ins. Co.*, 921 So. 2d 587, 591 (Fla. 2006).

Because appellant seeks to run for the office of school board member, the operative statute in this case is section 105.031(5)(a)1.:

(5) Items required to be filed.--

(a) In order for a candidate for judicial office or the *office of school board member* to be qualified, the following items must be received by the filing officer by the end of the qualifying period:

1. Except for candidates for retention to judicial office, a properly executed *check drawn upon the candidate's campaign account* in an amount not less than the fee required by subsection (3) or, in lieu thereof, the copy of the notice of obtaining ballot position pursuant to s. 105.035. If a candidate's check is *returned by the bank for any reason*, the filing officer shall immediately notify the candidate and the candidate shall, the end of qualifying notwithstanding, *have 48 hours* from the time such notification is received, excluding Saturdays, Sundays, and legal holidays, *to pay the fee with a cashier's check purchased from funds of the campaign account*. Failure to pay the fee as provided in this subparagraph shall disqualify the candidate.

§ 105.031(5)(a)1., Fla. Stat. (2017) (emphasis added).

Appellant notes that while there is not an abundance of case law interpreting section 105.031(5)(a)1., there is more case law interpreting section 99.061(7)(a)1., Florida Statutes, which applies broadly to filing fees for candidates for federal, state, district, or county offices other than judicial or school board member. § 99.061(1)-(3), Fla. Stat. This statute includes nearly

5

identical language as section 105.031 with regards to payment of the qualifying fee:

> (7)(a) In order for a candidate to be qualified, the following items must be received by the filing officer by the end of the qualifying period:
>
> 1. A properly executed check *drawn upon the candidate's campaign account* in an amount not less than the fee required by s. 99.092 or, in lieu thereof, as applicable, the copy of the notice of obtaining ballot position pursuant to s. 99.095. The filing fee for a special district candidate is not required to be drawn upon the candidate's campaign account. *If a candidate's check is returned by the bank for any reason*, the filing officer shall immediately notify the candidate and the candidate shall, the end of qualifying notwithstanding, *have 48 hours* from the time such notification is received, excluding Saturdays, Sundays, and legal holidays, *to pay the fee with a cashier's check purchased from funds of the campaign account*. Failure to pay the fee as provided in this subparagraph shall disqualify the candidate.

§ 99.061(7)(a)1., Fla. Stat. (2010)[1] (emphasis added).

## II. *Whether section 105.031(5)(a)1. is Ambiguous*

"When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Clines v. State*, 912 So. 2d 550, 555-56 (Fla. 2005)

---

[1] We refer to the 2010 version of this statute because it was revived by operation of law when the supreme court determined the more recent version of this statute passed in 2011 was unconstitutional. *See Wright v. City of Miami Gardens*, 200 So. 3d 765 (Fla. 2016).

6

(quoting *A.R. Douglass, Inc. v. McRainey*, 137 So. 157, 159 (1931)). "When necessary, the plain and ordinary meaning of words can be ascertained by reference to a dictionary." *Reform Party of Fla. v. Black*, 885 So. 2d 303, 312 (Fla. 2004) (quoting *Nehme v. Smithkline Beecham Clinical Labs., Inc.*, 863 So. 2d 201, 204–05 (Fla. 2003)).

Appellant argues "ambiguity exists as to whether it is permissible to pay the qualifying fee with a cashier's check purchased with campaign account funds without first attempting to pay with a check drawn upon the campaign account."[2]

We find section 105.031(5)(a)1. clearly sets forth a process. It requires that a candidate "must" submit "by the end of the qualifying period" a "check drawn upon the candidate's campaign account." § 105.031(5)(a)1., Fla. Stat. Then, only "[i]f a candidate's check is returned by the bank," the filing officer "shall immediately notify the candidate" of this return, and the candidate shall have "48 hours *from the time such notification is received*" to submit "a cashier's check purchased from funds of the campaign account." *Id.* (emphasis added).

The word "if" is conditional. It is defined as "in the event that; allowing that; on the assumption that; *on condition that.*" *If*, Merriam-Webster, http://www.merriam-webster.com/dictionary/if (last visited Aug. 15, 2018) (emphasis added). By conditioning that a cashier's check may be used "[i]f the candidate's check is returned by the bank," and by calculating the time period for filing a cashier's check from the time the candidate receives notice of the returned check, the statute clearly contemplates a

---

[2] We find the trial court correctly determined that a cashier's check is not a "check drawn upon the candidate's campaign account" as required by section 105.031(5)(a)1., Florida Statutes, because a cashier's check is drawn upon the bank. *See Warren Fin., Inc. v. Barnett Bank of Jacksonville, N.A.*, 552 So. 2d 194, 197 (Fla. 1989) ("[A] cashier's check is payable from the issuing bank's own account."); *State of Pa. v. Curtiss Nat'l Bank of Miami Springs, Fla.*, 427 F.2d 395, 398 (5th Cir. 1970) ("[A] cashier's check is . . . drawn by a bank upon itself . . . ."). We also note the statute itself draws a distinction between the two types of checks.

process by which a cashier's check may only be used on the condition that the campaign check is returned by the bank. Thus, there is no ambiguity.

III. *Applicability of the Doctrines of Substantial Compliance and Absurd Result*

Appellant argues the trial court erred by interpreting section 105.031(5)(a)1. to require total, hypersensitive compliance. He reasons that because he paid with a secured form of payment that is expressly recognized by the statute, he substantially complied with its requirements. Thus, disqualifying him is an absurd result. He relies primarily on the supreme court's decisions in *State ex rel. Siegendorf v. Stone*, 266 So. 2d 345 (Fla. 1972), and *Wright v. City of Miami Gardens*, 200 So. 3d 765 (Fla. 2016).

In *Siegendorf*, a judicial candidate filled out an oath of office stating he was running for group "3," but failed to specify that he was running for "county" judge. 266 So. 2d at 346. After the qualifying period ended, another candidate alleged the oath did not meet the statutory requirement that a candidate's oath should include the "title of the office" for which he is a candidate. *Id.* at 347.

The supreme court rejected this argument. It reasoned that "[l]iteral and 'total compliance' with statutory language which reaches *hypersensitive levels* and which strains the quality of justice is not required to fairly and *substantially* meet the statutory requirements to qualify as a candidate for public office." *Id.* at 346 (emphasis added). While it would have been preferable for the candidate to clarify he was running for "county judge" on the form, the Secretary of State was obviously able to ascertain which position was involved because he charged the candidate the correct fee amount for the county judge race. *Id.* at 347. "So long as *basic requirements* have been met," the supreme court found the appropriate time for changes or corrections to the oath "was at the qualification desk," where the corrections "could very simply have been added," rather than permitting a competitor to wait until after the qualifying period had ended to bring this challenge. *Id.* (emphasis added). (Courts have gone on to refer to this doctrine set forth in *Siegendorf* as the "substantial

compliance" doctrine. *See Browning v. Young*, 993 So. 2d 64, 67 (Fla. 1st DCA 2008) ("Substantial compliance, as the term is used in *Siegendorf*, is the functional equivalent of legal compliance.")).

In a footnote, however, the *Siegendorf* court distinguished that it reached a different result in cases that "dealt with a *lack of a basic qualifying requirement, i.e., paying a proper fee*, the filing of necessary qualifying papers and registering to vote." *Id.* at 347 n.3 (emphasis added). The court cited *State ex rel. Taylor v. Gray*, 25 So. 2d 492, 496 (Fla. 1946), which found a candidate who paid less than the required amount for a qualifying fee failed to qualify, even though he paid the amount that he was instructed to pay by the Secretary of State's office, because compliance with the qualifying statutes "constitutes a condition precedent" to becoming a candidate and the statute placed "responsibility for compliance" on the candidate.

Appellant argues the case at hand is analogous to *Siegendorf* because he substantially complied with the fee statute by submitting a campaign check paid for with funds from his campaign account. However, appellant seems to overlook the fact that *Siegendorf* distinguished that the substantial compliance doctrine does not apply to basic qualifying requirements, such as paying a proper fee.

Appellant also argues the trial court's interpretation of the statute requiring hypersensitive compliance led to an absurd result. He relies on *Wright*, 200 So. 3d 765, in which the supreme court suggested that requiring strict compliance with the fee provision in section 99.061 led to an absurd result in that case, though the court declined to apply the absurd result doctrine because it found the statute was not ambiguous. Appellant asks this court to follow *Wright* to the extent that it found strict compliance with a fee statute may create an absurd result.

Wright timely paid his qualifying fee with a "starter check" from his newly opened campaign account, but it was returned by the bank due to a bank error after the qualifying period had ended. *Wright*, 200 So. 3d at 767. Section 99.061(7)(a)1. had previously permitted a candidate a 48-hour window to provide a cashier's check in that situation, even if the qualifying period had ended. *Id.* at 772-73. However, the Legislature struck that

9

language in 2011. The version of the statute applicable in *Wright* stated that if the campaign check was "returned by the bank for any reason," the candidate had only "*until the end of qualifying* to pay the fee with a cashier's check." *Id.* at 772 (emphasis added) (citing § 99.061(7)(a)1., Fla. Stat. (2016)). Because the check was not returned until after the end of the qualifying period, Wright had no opportunity to submit a cashier's check. Regardless, he was disqualified. *Id.* at 767.

The Third District found the clear and unambiguous language of the statute must be applied despite the harsh result. *Id.* at 769. It agreed with this court's decision in *Levey v. Detzner*, which reached the same conclusion on nearly identical facts. *Id.* (citing *Levey v. Detzner*, 146 So. 3d 1224 (Fla. 1st DCA 2014) (finding candidate whose check was returned by bank after the qualifying period had ended was disqualified per the clear and unambiguous language of the statute)).

The supreme court in *Wright* acknowledged it was "alluring" to apply the absurd result doctrine in that case because a candidate who "did everything right is disqualified due to a banking error beyond the candidate's control." *Wright*, 200 So. 3d at 772. However, the court found the language of that statute was clear and unambiguous in requiring payment before the end of the qualifying period, regardless of the reason the check was returned by the bank. It noted the Legislature must have intended to create a bright-line rule when it removed the 48-hour cure period from the statute. *Id.* at 772-73. Thus, the court found the absurd result doctrine was inapplicable and the plain and unambiguous language of the statute must be applied, despite its harsh result. *Id.*

However, the court concluded this statute was unconstitutional because its provision disqualifying a candidate whose check was returned through no fault of his or her own was arbitrary and without a rational basis. *Id.* at 776-79. Thus, the court revived the prior version of the statute with the 48-hour window, giving Wright a chance to qualify with a cashier's check. *Id.* at 778-79.

Appellant acknowledges the *Wright* court did not apply the absurd result doctrine because it found the statute was not

10

ambiguous.[3] However, he relies on the court's suggestion that it was, in fact, absurd to disqualify the candidate in that case. Similarly here, he asks this court to find it would be an absurd result to disqualify appellant for paying his qualifying fee with a secured payment instrument that is expressly recognized by the statute.[4]

Appellant seems to overlook a key distinction between this case and *Wright*. The *Wright* court suggested the result in that case was absurd because a candidate who "did everything right is disqualified due to a banking error beyond the candidate's control." *Wright*, 200 So. 3d at 772. Here, appellant did not "do everything right" and the error was wholly within his control. The statute expressly required him to provide a check drawn upon his campaign account, and he used a cashier's check instead. His hesitancy to use a starter check is understandable

_____

[3] In his reply brief, appellant argues the *Wright* court's determination that section 99.061(7)(a)1., Florida Statutes, was not ambiguous is not binding on this court, even though section 105.031(5)(a)1., Florida Statutes, contains similar language, because *Wright* considered a different aspect of the statute. He is correct. *Wright* considered whether section 99.061(7)(a)1. was ambiguous as to whether a candidate whose check was returned due to bank error after the end of the qualifying period could still submit a cashier's check. *Wright*, 200 So. 3d at 771-72. In contrast, the issue here is whether a candidate may submit a cashier's check without first using a campaign check under section 105.031(5)(a)1. Thus, *Wright* is not controlling here on the question of ambiguity.

[4] Even though the absurd result doctrine may be applied under rare circumstances when a statute is unambiguous, "the absurdity doctrine is not to be used as a freewheeling tool for courts to second-guess and supplant the policy judgments made by the Legislature. It has long been recognized that the absurdity doctrine 'is to be applied to override the literal terms of a statute only under rare and exceptional circumstances.'" *State v. Hackley*, 95 So. 3d 92, 95 (Fla. 2012) (quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930)).

considering that in *Wright*, the candidate's starter check was returned by the bank through no fault of the candidate. However, unlike in *Wright*, here the applicable statute provided a 48-hour cure period during which appellant could have provided a cashier's check notwithstanding the end of the qualifying period if the bank returned his starter check. The supervisor of elections timely notified appellant of his error, but he was unable to correct it because he chose to leave the country during the last week of the qualifying period without authorizing anyone else to write a check from his campaign account. Nothing that happened in this case was outside of appellant's control.

The supervisor of elections argues that a strict interpretation of this statute does not lead to an absurd result because the Legislature had good reason for requiring candidates to use campaign checks whenever possible. Doing so provides a "paper trail" to ensure all expended funds came from the campaign account. *Wright*, 200 So. 3d at 782 (Polston, J., dissenting) ("Because section 99.061(7)(a)1. serves the legitimate government purpose of ensuring that candidates for office lawfully pay the required qualifying fee with campaign funds, it passes the rational basis test and is, therefore, constitutional.").

The supervisor notes that a similar federal provision requires political candidate committees to pay expenditures only through a "check drawn on" the campaign account. *See* 52 U.S.C. § 30102(h)(1). The Federal Election Commission explained in an advisory opinion that these requirements "seem designed to support the general statutory intention of the Act and the regulations to assure a complete and reliable 'paper trail' for record keeping, disclosure and audit purposes." *Op. Fed. Elec. Comm'n* 1993-04 n.2. *See also Op. Fed. Elec. Comm'n* 1975-10 at 1-2 (advising that while "[i]t is clear that the statute requires *all* contributions and *all* expenditures to pass through the checking account at the designated campaign depository," transferring funds from a checking to a savings account was permissible so long as the campaign "compli[ed] with the reporting requirements . . . that all contributions and all expenditures flow through the checking account"). As such, the supervisor argues that requiring candidates to initially use a campaign check to pay the qualifying fee is not an absurd result. We agree.

12

In summation, we find section 105.031(5)(a)1. is unambiguous, and neither the substantial compliance doctrine nor the absurd result doctrine entitles appellant to relief. Thus, we AFFIRM.

LEWIS and RAY, JJ., concur.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

Ronald G. Meyer, Jennifer S. Blohm, Lynn C. Hearn, and Major R. Thompson of Meyer, Brooks, Demma and Blohm, P.A., Tallahassee, for Appellant.

George T. Reeves, Madison, for Thomas "Tommy" Hardee, Appellee.