COURT OF APPEALS
DECISION
DATED AND FILED

June 9, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP373**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV1016

IN COURT OF APPEALS
DISTRICT IV

---

DERRICK A. SANDERS,

   PETITIONER-APPELLANT,

 V.

STATE OF WISCONSIN CLAIMS BOARD,

   RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County: STEPHEN E. EHLKE, Judge. *Reversed and cause remanded with directions*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

¶1      KLOPPENBURG, J.  Derrick Sanders served twenty-six years in prison for a crime that he did not commit.  He submitted a claim to the Wisconsin

Claims Board (the "Claims Board") under WIS. STAT. § 775.05 (2019-20)[1] seeking compensation as an "innocent person[] who [has] been convicted of a crime." *See* § 775.05(1). On appeal, Sanders argues that the Claims Board erred when it awarded compensation under § 775.05(4) in the amount of the statutory maximum of $25,000 without addressing Sanders' request for additional compensation. We conclude that the Claims Board made no findings or analysis discernible in the record to demonstrate its exercise of discretion in determining whether the statutory maximum is "an adequate compensation" as required under § 775.05(4). Accordingly, we reverse and remand to the circuit court with directions to remand to the Claims Board to properly exercise its discretion as to whether $25,000 is or is not adequate compensation where, as here, additional compensation was requested.

## BACKGROUND[2]

¶2      The following undisputed facts are taken from the administrative record filed by the Claims Board in the circuit court.

¶3      In October 1993, Sanders was convicted in Milwaukee County circuit court of first-degree intentional homicide as party to a crime related to a

---

[1] As we discuss in greater detail below, the legislature has provided in WIS. STAT. § 775.05 for compensation for "innocent persons who have been convicted of a crime" and who have been imprisoned as a result of the conviction. Sec. 775.05(1)-(4).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] In his appellant's brief, Sanders improperly labels the first page of his argument as page number 1, after he has presented his statements of the case and of the facts. While the brief appears to be well within the length allowed under WIS. STAT. RULE 809.19(8)(c)1., we remind Sanders that the appellant's certification that the brief meets the length requirements shall include the statements of the case and of the facts, as well as the argument and conclusion. *Id.*

fatal shooting, and he was sentenced to life imprisonment. Sanders maintained at the time of conviction, and has consistently maintained since, that he was not involved in or aware of the shooting. In 2017, Sanders filed a motion for postconviction relief based in part on ineffective assistance of counsel. In August 2018, the circuit court granted the motion and issued a decision concluding that the State failed to show that the facts regarding Sanders' conduct satisfied the elements of party to a crime liability. In September 2018, the State informed the court on the record that it "could not prove that Mr. Sanders was a party to the crime of the homicide." The circuit court promptly vacated the judgment of conviction and, on the State's motion, dismissed the case.

¶4 In February 2019, Sanders filed with the Claims Board a claim under WIS. STAT. § 775.05 seeking the statutory maximum compensation of $25,000 plus up to an additional $5,729,965 in damages for the twenty-six years he spent in prison. *See* § 775.05(4). Sanders supported his claim with itemized damages including approximately $30,000 for loss of property and $500,240 for lost wages.[3] He also calculated lost wages at higher incomes that he asserted he could have earned in occupations such as law enforcement given that, at the time of his arrest, he was employed, had no criminal record, had excelled in high school, and had been honorably discharged from the United States Navy. He calculated lost wages at annual incomes of $150,000 and $200,000, resulting in total amounts of lost wages over twenty-six years of $3.9 million and $5.2 million, respectively.

---

[3] Sanders determined the amount of his lost wages by calculating the amount of money he would have earned working five days per week at his post-release hourly wage of $9.25 over the twenty-six years that he was in prison.

Sanders also sought unspecified damages for mental, physical, and emotional distress, anxiety, and harassment from staff and inmates in prison.

¶5 Upon receipt of Sanders' claim, the Claims Board forwarded a copy of the claim to the Milwaukee County District Attorney John Chisholm asking for that office's recommendation regarding the "appropriate response to the claim." The District Attorney sent the Claims Board a letter stating that the claim was reviewed by the prosecutor who had handled the 2018 dismissal of the case. The letter continued, "Based upon his review of the facts surrounding the crime and Mr. Sanders' petition for compensation, the Milwaukee [County] District Attorney's Office does not oppose his petition."

¶6 The Claims Board first considered Sanders' claim on August 22, 2019, at which time it deferred decision of the claim "in order for a hearing to be scheduled at which claimant and the Milwaukee County District Attorney's Office will be present to answer questions." The Claims Board scheduled the hearing for December 2019.

¶7 The following string of three emails between the Milwaukee County District Attorney's Office and the Claims Board in November 2019 was not copied to Sanders. In the first email, the District Attorney's Office informed the Claims Board that it "will not have anyone to send to this upcoming hearing. We have nothing further to add other than what was stated on the record in open court by [the prosecutor] at the time this matter was dismissed." In the second email, the Claims Board followed up with this message: "[The District Attorney's] April 1, 2019, response to the Claims Board stated that the Milwaukee [District Attorney]'s Office 'does not oppose' Mr. Sanders' petition. To clarify, are you saying that the [District Attorney]'s Office does not oppose payment of

4

$5,754,965 to Mr. Sanders?"  In the third email, the District Attorney's Office responded:

> [The District Attorney's] letter of April 1, 2019, intends to express our general support for Mr. Sanders' petition for compensation.  We originally saw his form that requested the statutory maximum amount of $25,000, which we support.   Regarding his other claims for damages, which appears to have varied over the course of this process, we are not taking any position on those claims, as we understand the claims board is better situated to make that determination.

¶8      At the hearing before the Claims Board, Sanders reviewed the record of the proceedings in his criminal case and stated, "I was innocent, I always maintained my innocence, and there is no proof, there is no evidence, there [are] no facts to the contrary of that."  He then asked for compensation "for the 25-26 years I spent wrongfully convicted in the Wisconsin prison system."

¶9      The Claims Board asked Sanders two questions.  The first question was:  "[W]here did you come up with the $5 million?"  Sanders explained his earning potential based on his having had no criminal record and being ex-military, and said, "I'm not trying to say I would have earned $5 million, what I'm saying is compensation due to … the precedent that I've been seeing."  Sanders referenced Wisconsin cases in which a person who had been wrongfully convicted and spent twenty-four years in prison received $7.5 million, and a person who had been wrongfully convicted and spent thirteen years in prison received $13 million.

¶10     The second question was:  "[H]ave you actually made any efforts to try to sue your [defense] attorney for malpractice?"  Sanders responded that he had filed a notice of claim and injury and was trying to contact attorneys in Wisconsin from where he was living in Indiana.  The hearing then ended.

¶11    The Claims Board issued a written decision in February 2020 (the "initial decision"). The Claims Board determined that "the evidence is clear and convincing that Sanders was innocent of the charge" of which he was convicted and awarded Sanders "compensation in the amount of $25,000."

¶12    Sanders submitted a Petition for Rehearing, asserting that the Claims Board's decision erred in two respects:   (1) the decision misstated the District Attorney's Office's position; and (2) the decision did not address his claim for additional damages beyond the statutory maximum. The Claims Board responded with a letter denying the petition (the "rehearing decision").

¶13    Sanders then filed a petition for judicial review of the Claims Board's decisions awarding compensation and denying rehearing. In a written decision and order, the circuit court affirmed the Claims Board's decisions and dismissed Sanders' petition. This appeal follows.

¶14    We will describe in pertinent detail the substance of the Claims Board's initial decision and its rehearing decision in the Discussion below.

## DISCUSSION

¶15    Sanders argues that the Claims Board erred when it awarded compensation in the amount of the statutory maximum of $25,000 without addressing his request for additional compensation as required under WIS. STAT. § 775.05(4). We begin with the applicable law and standard of review, and then proceed with our analysis.

6

## I. Applicable Law and Standard of Review

¶16    The legislature has provided in Wis. Stat. § 775.05 for compensation for "innocent persons who have been convicted of a crime" and who have been imprisoned as a result of the conviction.  Sec. 775.05(1)-(4).  Such a person must first "petition the claims board for compensation for such imprisonment."  Sec. 775.05(2).  The Claims Board shall send a copy of the petition to the prosecutor who prosecuted the petitioner and the judge who sentenced the petitioner, for their information.  *Id.*  The Claims Board shall then "hear[] the evidence on the petition," and make a finding as to whether "the evidence is clear and convincing that the petitioner was innocent of the crime for which he or she suffered imprisonment."  Sec. 775.05(3).  If the Claims Board "finds that the petitioner was innocent and that he or she did not by his or her act or failure to act contribute to bring about the conviction and imprisonment," the Claims Board shall then "find the amount which will equitably compensate the petitioner, not to exceed $25,000 and at a rate of compensation not greater than $5,000 per year for the imprisonment."  Sec. 775.05(4).  "If the [C]laims [B]oard finds that the amount it is able to award is not an adequate compensation it shall submit a report specifying an amount which it considers adequate" to the legislature.  *Id.*

¶17    The Claims Board is not "bound by common law or statutory rules of evidence, but shall admit all testimony having reasonable probative value, excluding that which is immaterial, irrelevant or unduly repetitious."  Wis. Stat. § 16.007(2).  The Claims Board's findings and award are subject to judicial review "as provided in ch. 227."  Wis. Stat. § 775.05(5).

7

¶18    "When an appeal is taken from a circuit court order reviewing an [administrative] agency decision, we review the decision of the agency, not the circuit court."  *Hilton ex rel. Pages Homeowners' Ass'n v. DNR*, 2006 WI 84, ¶15, 293 Wis. 2d 1, 717 N.W.2d 166; *see also Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21; *Turnpaugh v. State Claims Bd.*, 2012 WI App 72, ¶1, 342 Wis. 2d 182, 816 N.W.2d 920.  We uphold the agency's factual findings if they are supported by substantial evidence.  WIS. STAT. § 227.57(6).  We review the agency's legal conclusions de novo.  *Tetra Tech*, 382 Wis. 2d 496, ¶84; *see also id.*, ¶¶78, 108 (citing § 227.57(10) and (11)) (directing that a court give "'due weight' to the experience, technical competence, and specialized knowledge of an administrative agency as [the court] consider[s] its arguments" and exercises "independent judgment in deciding questions of law.").

¶19    As stated, the legislature has directed the Claims Board to "find the amount which will equitably compensate the petitioner" up to certain statutory maximum amounts and to report to the legislature "if [it] finds that the amount it is able to award is not an adequate compensation."  WIS. STAT. § 775.05(4).  The use of the term "equitably" together with "adequate" connotes an exercise of discretion.  *See, e.g.*, *Forest Cnty. v. Goode*, 219 Wis. 2d 654, 683, 579 N.W.2d 715 (1998) (concluding that a statute authorizing injunctive relief does not eliminate a circuit court's equitable power in its exercise of discretion); *Nationstar Mortg. LLC v. Stafsholt*, 2018 WI 21, ¶23, 380 Wis. 2d 284, 908 N.W.2d 784 ("The circuit court's decision to grant equitable remedies is reviewed for an erroneous exercise of discretion."); *GMAC Mortg. Corp. v. Gisvold*, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998) ("Foreclosure proceedings are equitable in nature, and the circuit court has the equitable authority to exercise discretion throughout the proceedings."); *Klawitter v. Klawitter*, 2001 WI App 16, ¶8, 240

Wis. 2d 685, 623 N.W.2d 169 ("We apply the erroneous exercise of discretion standard in reviewing decisions in equity.").

¶20    A reviewing court "shall not substitute its judgment for that of the agency on an issue of discretion." WIS. STAT. § 227.57(8). However, "[d]iscretion is more than a choice between alternatives without giving the rationale or reason behind the choice." *Reidinger, O.D., v. Optometry Examining Bd.*, 81 Wis. 2d 292, 297, 260 N.W.2d 270 (1977).

> In the first place, there must be evidence that discretion was in fact exercised. Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning. The process must depend on facts that are of record or that are reasonably derived by inference from the record and a conclusion based on a logical rationale founded upon proper legal standards .… [T]here should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth.

*Id.* (quoted sources and internal quotation marks omitted). *See also Argonaut Ins. Co. v. Labor and Industry Com'n*, 132 Wis. 2d 385, 391-92, 392 N.W.2d 837 (Ct. App. 1986) (reversible error where hearing examiner denied request for continuance "without giving the parties or the reviewing court any inkling of the reasons underlying the decision," concluding: "There is nothing in the record before us to indicate that the examiner exercised her discretion as that term has been defined by the courts, and her failure to do so is in itself an abuse of discretion.").

¶21    The parties' arguments in this appeal also require that we construe statutory provisions. "The interpretation and application of statutes present questions of law that we review independently." *Brey v. State Farm Mut. Auto. Ins. Co.*, 2022 WI 7, ¶9, 400 Wis. 2d 417, 970 N.W.2d 1. When interpreting a

statute, our analysis begins with the statutory text. *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning." *Id.* "Importantly, ascertaining the plain meaning of a statute requires more than focusing on a single sentence or portion thereof." *Brey*, 400 Wis. 2d 417, ¶11 (citation omitted). When deciding whether language is plain, courts must read the words in context and with a view to the place of those words in the overall statutory scheme. *Id.*; *see also Kalal*, 271 Wis. 2d 633, ¶46 ("Context is important to meaning. So, too, is the structure of the statute in which the operative language appears."). "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.*, ¶46 (citation omitted). We afford no deference to the agency's interpretation of the statute in question. WIS. STAT. § 227.10(2g); *Clean Wisconsin v. WDNR*, 2021 WI 72, ¶10, 398 Wis. 2d 433, 961 N.W.2d 611.

## II. Analysis

¶22 To repeat, Sanders argues that the Claims Board erred when it awarded the statutory maximum amount of $25,000 without addressing his request for additional compensation above the statutory maximum. We first present in greater detail the contents of the Claims Board's initial decision and its rehearing decision. We next apply the legal principles stated above and explain our conclusion that, on this record, the Claims Board failed to properly exercise its discretion in awarding the statutory maximum of $25,000 to Sanders without addressing his request for additional compensation. We then address and reject the Claims Board's arguments to the contrary.

*A. Claims Board's Decisions*

¶23    The Claims Board's initial decision begins with a detailed recitation of the facts, as presented by Sanders with supporting documentation, pertaining to a fatal shooting in 1992 and the ensuing criminal proceedings. In this facts section, the Claims Board reviews how those proceedings led to Sanders' conviction in 1993 and the dismissal of his criminal case in 2018, after Sanders had served twenty-six years of a life sentence in prison. This facts section ends with one sentence regarding Sanders' personal situation at the time of his arrest, and two sentences stating his request for the statutory maximum and his request for additional compensation based on awards "in prior Innocent Convict Compensation claims."

¶24    The initial decision continues with a section presenting the District Attorney's position on Sanders' claim, as stated in the November 2019 email exchange described in ¶7 above. The initial decision then proceeds to a final section entitled "Discussion and Conclusion." The first paragraph of this section states the Claims Board's obligation under WIS. STAT. § 775.05(3) to determine whether there is clear and convincing evidence that Sanders is innocent of the crime for which he was imprisoned. This section then engages in a detailed analysis of the evidence pertinent to that determination. The final paragraph of this section contains two sentences: (1) "Based on the above, the Board concludes and finds that the evidence is clear and convincing that Sanders was innocent of the charge discussed herein."; and (2) "Accordingly, the Board further concludes that compensation in the amount of $25,000 shall be awarded from the Claims Board appropriation."

¶25 Sanders petitioned for rehearing, challenging the Claims Board's articulation of the District Attorney's Office's position and the Claims Board's failure to address his request for compensation above the statutory maximum. In its decision denying rehearing, the Claims Board first states that the record supports the initial decision's statement of the District Attorney's Office's position and attaches a copy of the November 2019 email string, described above, between the Claims Board and the District Attorney's Office showing that the initial decision's statement is correct. Second, the Claims Board states that "the absence of an explicit statement regarding the request for additional damages does not render the Board's [initial] decision incomplete." The Claims Board further states that it is not required to submit a report to the legislature "specifying an amount which it considers adequate" because it did not conclude that the statutory maximum is "not adequate compensation."

## B. Failure to Properly Exercise Discretion

¶26 The legislature imposes two separate and distinct obligations on the Claims Board in WIS. STAT. § 775.05. The first, stated in § 775.05(3) ("the innocence obligation"), requires that the Claims Board determine whether there is clear and convincing evidence that the petitioner is innocent of the crime for which the petitioner was imprisoned. The second, stated in § 775.05(4) ("the compensation obligation"), consists of two parts: (1) the Claims Board shall "find the amount which will equitably compensate the petitioner" for the wrongful conviction and imprisonment, "not to exceed $25,000 and at a rate of compensation not greater than $5,000 per year for the imprisonment;" and (2) the Claims Board shall recommend the "amount which it considers adequate" to the legislature if it "finds that the amount it is able to award is not an adequate compensation." Sec. 775.05(4).

¶27     The first part of the compensation obligation cabins the Claims Board's exercise of discretion to determine what amount will equitably compensate the petitioner within certain maximum amounts.  The second part of the compensation obligation extends the Claims Board's exercise of discretion to determining whether the maximum amount that it is able to award is adequate and, if it determines that it is not, requires that the Claims Board report to the legislature the "amount which it considers adequate" beyond what it may itself award.  WIS. STAT. § 775.05(4).

¶28     The legislature's use of the terms "equitable" and "adequate" establishes the connection between these two discretionary determinations.  "Equitable" means "dealing fairly with" and "adequate" means "sufficient for a specific need or requirement."  *Equitable*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/equitable (last visited May 31, 2022); *adequate*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/adequate (last visited May 31, 2022).  Applying these dictionary definitions to the two provisions that define the Claims Board's compensation obligation, the Claims Board must determine whether the maximum amount that it is able to award is sufficient ("adequate") to fairly ("equitably") compensate the petitioner.

¶29     Further, the clause that links the two provisions, "If the Claims Board finds that the amount it is able to award is not an adequate compensation," also confirms this meaning of the two provisions defining the Claims Board's compensation obligation.  This linking clause completes the provision that precedes it and leads into the provision that follows it.

¶30 Thus, WIS. STAT. § 775.05(4), read as a whole, requires that the Claims Board, when it awards the statutory maximum amount, explain its discretionary determination that the statutory maximum amount either does or does not constitute adequate compensation. *See **Reidinger**, 81 Wis. 2d at 297. If the Claims Board decides that the amount that it is able to award is insufficient to fairly compensate the petitioner, then it must determine an amount that is sufficient to forward to the legislature. If the Claims Board, when faced with a request for more than the statutory maximum amount of compensation, decides that the amount that it is able to award is not insufficient, then it need not submit a report to the legislature. However, in both situations the Claims Board must exercise its discretion one way or the other; evaluating the adequacy of the amount that it is able to award, supported by an explanation showing its exercise of discretion.

¶31 As we now explain, the Claims Board's initial decision and its rehearing decision reflect its reasoning and decision-making only as to its findings regarding the innocence obligation but not its exercise of discretion regarding the compensation obligation.

¶32 Neither the Claims Board's initial decision nor its rehearing decision contain any fact-finding or analysis regarding its obligation under WIS. STAT. § 775.05(4) to demonstrate its exercise of discretion in determining whether, having awarded the statutory maximum amount in response to Sanders' request for compensation above that amount, the amount that it is able to award is or is not adequate to compensate Sanders for his wrongful conviction and twenty-six years spent in prison. The discussion in the initial decision is prefaced solely by reference to the part of the statute in § 775.05(3) that directs the Claim Board, in the decision's words, to "determine whether or not the evidence is clear and

convincing that the petitioner was innocent of the crime for which he was imprisoned." The decision carefully analyzes the facts and "concludes and finds" that it is. No similar preface or analysis precedes its "further" conclusion that "compensation in the amount of $25,000 shall be awarded." Indeed, there is no reference at all in that conclusion, or the discussion that precedes it, either to § 775.05(4) or to the term "adequate."

¶33 The rehearing decision does not help fill in the blanks. It only points to the fact that the Claims Board "did not conclude that the amount which it was able to award was 'not adequate compensation,'" but does not address the initial decision's failure to provide an explanation for its determination that the amount that it was able to award was adequate compensation. It then states in summary fashion that because the decision did not contain a conclusion regarding the inadequacy of the compensation amount, it was not required to submit a report to the legislature. However, the Claims Board's duty to submit a report to the legislature arises only after it has exercised its discretion in first determining that "the amount it is able to award is not an adequate compensation." As stated, the Claims Board must demonstrate its exercise of its discretion in determining, one way or the other, whether the amount that it is able to award is adequate. That the Claims Board's decision did not contain a conclusion regarding the adequacy of the compensation amount confirms that the decision does not reflect the Claims Board's exercise of discretion in making the determination relieving it of the duty to submit a report to the legislature.

¶34 The rehearing decision also, in a wholly circular and conclusory fashion, states that its failure to make any explicit statement about whether the statutory maximum is adequate in Sanders' situation "does not render the Board's decision incomplete." On its face, the Board's decision *is* incomplete, given its

15

obligation under WIS. STAT. § 775.07(4) to determine whether the maximum amount that it awarded constitutes adequate compensation in Sanders' specific situation where he requested more than the maximum amount that the Claims Board is authorized to award under the statute. Neither decision contains any fact-finding, analysis, or rationale regarding such a determination.

¶35 A reviewing court may affirm a discretionary determination when the facts that formed the foundation for the determination are not specified but "the undisputed record supports" the determination. *Keane v. St. Francis Hosp.*, 186 Wis. 2d 637, 668–69, 522 N.W.2d 517 (Ct. App. 1994) (citing *Galuska v. Kornwolf*, 142 Wis. 2d 733, 419 N.W.2d 307 (Ct. App. 1987) (in mandamus action, reviewing court is obliged to uphold discretionary decision if it can conclude *ab initio* that there are facts in the record that would support the decision had discretion been exercised on the basis of those facts). We now review "the undisputed record" to assess whether it supports a discretionary decision that the statutory maximum amount is not inadequate compensation. *See Keane*, 186 Wis. 2d at 668.

¶36 Here, there are few, if any, facts in the Claims Board's decision potentially pertaining to adequate compensation beyond a recitation of the facts regarding Sanders' criminal proceedings, his personal situation at the time of his arrest, and the District Attorney's Office's position on his petition. More importantly, in terms of a reviewing court's ability to discern any rationale based on those facts, there is no hint as to how the Claims Board might have related those facts to a discretionary determination of adequate compensation.

¶37 As to the criminal proceedings, the decision references: Sanders' acknowledgement that he participated in a beating of the victim directly prior to

and separate from the fatal shooting in 1992; Sanders' consistent claim that he was not involved in or aware of the shooting; the shooter's averment in an affidavit in 1996 and statement to law enforcement in 2018 that he alone was responsible for the shooting; and the circuit court's conclusion, based on the State's position at the postconviction motion hearing in 2018, that there was no factual basis for Sanders' conviction of first degree intentional homicide as party to a crime. As to Sanders' personal situation at the time of arrest, the decision references Sanders' representation that "at the time of his arrest he was employed full-time, had no criminal record and was an honorably discharged US Navy Veteran." As to the District Attorney's Office's position, the decision states that the Office does not oppose Sanders' claim for $25,000 and takes no position on his claim for additional compensation.

¶38     It is possible that Sanders' participation in the beating, his personal situation at the time of arrest, and the District Attorney's Office's position might all bear on a determination of whether the statutory maximum amount is adequate compensation under WIS. STAT. § 775.05(4). However, there is no indication in the record as to in what manner or context these facts were considered, or as to how much relative weight the Claims Board may have given these and other facts. Moreover, the initial decision notes that Sanders referenced the awards "in prior Innocent Convict Compensation claims" but does not then engage in any analysis comparing or contrasting those prior cases. Rather, as stated, in its discussion the decision only analyzes the clear and convincing evidence of innocence component of the statutorily required review under § 775.05(3).

¶39     The "undisputed record" may weigh in favor of or against the second component of the statutorily required review under WIS. STAT. § 775.05(4): a determination of whether the maximum amount that the Claims Board is able to

award is adequate compensation in Sanders' situation. However, this court "shall not substitute its judgment for that of the agency on an issue of discretion." WIS. STAT. § 227.57(8). Where, as here, there are no discernable facts or rationale in the record to support the conclusion that the Claims Board exercised its discretion to make such a determination, we have no option but to remand for the Claims Board to properly exercise its discretion. *See Reidinger*, 81 Wis. 2d at 297 ("Discretion is more than a choice between alternatives without giving the rationale or reason behind the choice.").

¶40 In sum, we conclude that the Claims Board made no findings or analysis discernible in the record to demonstrate its exercise of discretion in determining whether the statutory maximum is "an adequate compensation" in Sanders' situation as required by WIS. STAT. § 775.05(4).

¶41 Before turning to the Claims Board's arguments to the contrary, we briefly address Sanders' arguments that the Claims Board erred in three additional respects. We need not consider these additional issues because our conclusion that the Claims Board failed to exercise its discretion disposes of this appeal. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive."). However, we briefly address them for the sake of completeness.

¶42 First, Sanders suggests that at least three fact-specific decisions in which the Claims Board has awarded compensation establish a prior practice of awarding more than the statutory maximum whenever requested, or at least a practice of specifically addressing the request for additional compensation, and the Claims Board fails to explain its deviation from that practice in this case. WIS.

18

STAT. § 227.57(8) (providing that a court shall reverse or remand if it determines that the agency's discretion is inconsistent with prior agency practices and the "deviation therefrom is not explained to the satisfaction of the court."). We have reviewed the "Claims Board Precedent Log: [WIS. STAT.] § 775.05" in the administrative record, which describes the details and disposition of approximately fifty claims under § 775.05 since 1960. Our review of the log shows that, in those very few cases in which the Claims Board made an award and the petitioner requested more than the statutory maximum, the Claims Board's practice was variable in terms of whether and to what extent it explained its award. We agree with the Claims Board that these cases are so few in number and fact-specific that they do not establish a relevant prior agency practice of any kind. *See Barron Elec. Co-op v. Public Serv. Comm'n of Wis.*, 212 Wis. 2d 752, 771, 569 N.W.2d 726 (Ct. App. 1997) (one single, factually distinguishable decision does not constitute a "prior agency practice" under § 227.57(8)).

¶43     Second, Sanders argues that the Claims Board's failure to address his request for additional compensation deprived him of his rights to sue the State and of access to the courts. This argument lacks any support in the law. Only the legislature may "authorize suits against the state." *Lister v. Board of Regents of the Univ. of Wis. Sys.*, 72 Wis. 2d 282, 294, 240 N.W.2d 610 (1976). Here, the legislature has provided the right to judicial review of Claims Board decisions, and Sanders has fully availed himself of that right in these proceedings. *See* WIS. STAT. § 775.05(5) (the Claims Board's findings and award are subject to judicial review "as provided in ch. 227."). To the extent that Sanders is arguing that the Claims Board is required to report to the legislature in order to allow him to sue the State other than in a chapter 227 judicial review action, the language in § 775.05(4) refutes his argument. *See* § 775.05(4) (requiring that the Claims

Board submit a report to the legislature only "[i]f the [C]laims [B]oard finds that the amount it is able to award is not an adequate compensation.").[4]

¶44    Third, Sanders argues that he was prejudiced by the Claims Board's failure to inform him of its "ex parte" communication with the Milwaukee County District Attorney's Office on that Office's position regarding his petition. To recap, in its April 2019 letter, the District Attorney's Office stated that it "does not oppose [Sanders'] petition." In response to the Claims Board's request for clarification, the District Attorney's Office expressed in a November 2019 email "general support for Mr. Sanders' petition for compensation," specifically supported his request for the statutory maximum, and took no position on, and deferred to the Claims Board as "better situated" to consider, his request for additional compensation.

¶45    A party may show a due process violation arising from an ex parte communication if the communication "introduced new information on which the [decision-maker] based its decision." *Marder v. Board of Regents of the Univ. of Wis. Sys.*, 2005 WI 159, ¶33, 286 Wis. 2d 252, 706 N.W.2d 110. In *Marder*, our supreme court quoted with approval the following explanation of when ex parte communications may implicate due process, in a case brought by a former employee challenging his termination from employment:

> The introduction of new and material information by means of *ex parte* communications to the deciding official undermines the public employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond ….

---

[4] Both parties state that a petitioner may also commence an action against the State if the legislature does not allow the claim under WIS. STAT. § 775.01. Whether the parties are correct does not matter to our analysis.

> However, not every *ex parte* communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding. Only *ex parte* communications that introduce new and material information to the deciding official will violate the due process guarantee of notice.

*Marder*, 286 Wis. 2d 252, ¶28 (quoting ***Stone v. FDIC***, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999)).

¶46 Sanders argues that the District Attorney's Office's April 2019 letter and the ex parte November 2019 email stated positions that differ in material ways; that the Claims Board's decisions misstate the Office's initial position; and that Sanders was unable to address the difference or contest two alleged factual errors in the email, namely: (1) that his petition did not from the start include his claim for additional compensation; and (2) that his claim for additional compensation varied.

¶47 The Claims Board argues that Sanders has not shown that rules prohibiting ex parte communications apply to its review of his petition. However, Sanders in his appellant's brief cites the Black's Law Dictionary definition of "ex parte communication" and applies that definition to the facts here to support his argument that the November 2019 emails constitute new and material information between the District Attorney's Office and the Claims Board. The Claims Board then argues that Sanders cannot show that he suffered any prejudice from the ex parte communications because, according to the Claims Board, there is no difference that matters between the Office's positions as stated in the April 2019 letter and the November 2019 email. However, if there is no difference, then it is not clear why the Claims Board sought clarification of the former position and states in its initial decision only the latter position.

¶48 In any event, while the Claims Board's initial decision presents only the District Attorney's Office's statement of position as stated in the November 2019 email, as explained above, the initial decision contains no discussion of that statement, either alone or in connection with the statement in the April 2019 letter. The Claims Board's rehearing decision similarly does not discuss the significance of either statement. On remand the Claims Board may, as part of its exercise of discretion, articulate on the record whether and how it considered either or both of the District Attorney's Office's statements.[5]

## C. Claims Board's Arguments

¶49 The Claims Board begins by arguing that it need only address additional compensation if it finds that the statutory maximum is inadequate. However, this begs the question when, as explained above, there is no indication in the record that the Claims Board exercised its discretion to determine whether the statutory maximum is inadequate.

¶50 The Claims Board next argues that "the statute does not require the Claims Board to make that affirmative finding" that the statutory maximum is inadequate, and that its award of the statutory maximum here indicates that it found that the statutory maximum is not inadequate. As explained above, the statute requires the Claims Board to exercise its discretion to determine whether,

---

[5] Sanders may also intend to make additional constitutional arguments, including that he was denied his rights to equal protection and due process and that WIS. STAT. § 775.05 is unconstitutional. As to these potential arguments, the Claims Board explains in its response brief why those arguments fail and Sanders does not contest the Claims Board's analyses in his reply brief. Accordingly, we deem Sanders to have conceded that the Claims Board's arguments as to these issues are correct. *See United Co-op. v. Frontier FS Co-op.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

when it has awarded the statutory maximum amount and the petitioner has requested additional compensation above the statutory maximum amount, the amount that it is able to award is or is not adequate compensation. *See* WIS. STAT. § 775.05(4). Saying that it suffices simply to vote to award the statutory maximum, without any fact-finding or rationale supporting the discretionary determination whether the statutory maximum is or is not adequate, eliminates the parameters that guide our review of the exercise of discretion. *See **Loy v. Bunderson***, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982) (A court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law and, using a rational process, reaches "a conclusion that a reasonable judge could reach."). No such process is discernible simply from the vote here, particularly when the vote is not accompanied by any reference to the statute that guides the Claims Board's exercise of discretion as to the determination of whether the statutory maximum amount that it has awarded is or is not adequate compensation.

¶51     Finally, the Claims Board argues that Sanders cannot show "that he was in any way harmed [just] because the Claims Board did not explicitly state: 'we find that $25,000 is adequate compensation.'" However, the Claims Board cites no law supporting the proposition that a harmless error standard applies where an agency fails on the record to demonstrate its exercise of discretion. The case it does cite, ***Houslet v. DNR***, 110 Wis. 2d 280, 329 N.W.2d 219 (Ct. App. 1982), certainly does not.[6] In that case, the court upheld the denial by the Department of Natural Resources of a dredging contract under the wetlands

---

[6] Notably, the Claims Board fails to include a pin cite directing us to the language that supports the proposition for which it cites the opinion.

regulations. *Id.* at 281. The court also ruled that the dredging contract statute required that, in addition, the Department make a finding as to the potential for water pollution. *Id.* at 291. However, the court concluded that it was not necessary to remand for the Department to make such a finding because the Department had "properly rejected" the contract under the wetlands regulations. *Id.* While the court referred to the Department's failure to make the water pollution finding as harmless error, *id.* at 281, it is clear that the error was harmless only because the Department had made findings required under different regulations supporting its denial of the contract. *Id.* at 291. That is, the record contained fact-finding and legal conclusions that supported a different, dispositive, basis for upholding the Department's decision. The Claims Board cites no part of that opinion indicating that it concerned the Department's exercise of discretion; nor does the Claims Board cite any part of this record that contains similar fact-finding or rationale showing a dispositive exercise of discretion.

¶52 Harmless error may properly apply when a decision maker sets forth the basis of its discretion but that discretion is nonetheless erroneously exercised. *See, e.g.*, ***Martindale v. Ripp***, 2001 WI 113, ¶¶4, 19-20, 246 Wis. 2d 67, 629 N.W.2d 698 (conducting a harmless error analysis when a circuit court erroneously exercised its discretion in excluding expert testimony at trial, but provided an explanation for the exclusion). However, the Claims Board points to no legal authority applying a harmless error analysis when the record lacks any findings or analysis to demonstrate the exercise of discretion. Under the law stated above, in such a situation we search the record to see if supports the exercise of discretion that was not expressly explained. We have explained why we are unable to discern such support here. When an agency does not explicitly exercise its discretion, and when there is no discernible fact-finding or rationale in

the record to support an implicit exercise of discretion, the concept of harmless error does not relieve the reviewing court of the obligation to remand for the agency to exercise its discretion as required by the statute.[7]

## CONCLUSION

¶53    For the reasons stated, we reverse and remand to the circuit court with directions to remand to the Claims Board to properly exercise its discretion as to whether the statutory maximum amount of $25,000 that it awarded is or is not adequate compensation where, as here, additional compensation was requested.

---

[7] The dissent's conclusion that an explanation will not change the result, ¶¶92, 97, disregards the principles of statutory construction and relevant case law set forth above, as they apply to the relief being ordered.

"Statutory interpretation centers on the 'ascertainment of meaning,' not the recitation of words in isolation." ***Brey v. State Farm Mut. Auto. Ins. Co.***, 2022 WI 7, ¶13, 400 Wis. 2d 417, 970 N.W.2d 1.  The dissent's focus on the word "if" in ¶¶74-79, without considering the entire text of WIS. STAT. § 775.05(4) in view of its structure and the logical relation of the two parts at issue, reflects a "hyper-literal" approach. ***Id.***  That approach yields an unreasonable interpretation that does not recognize either the discretionary authority granted in § 775.05(4) to the Claims Board in considering a request for compensation by a person who has been unlawfully imprisoned, or the gravity underlying the exercise of that discretionary authority when a person has unlawfully suffered a loss of liberty.

Our supreme court has made clear that it is an erroneous exercise of discretion not to set forth the basis of the exercise of discretion. ***Reidinger, O.D., v. Optometry Examining Bd.***, 81 Wis. 2d 292, 297, 260 N.W.2d 270 (1977).  For forty-five years, that holding has remained intact. In his appellant's brief, Sanders cites ***Reidinger*** in support of his argument that the Claims Board was required to explain its rationale.  Although he includes this citation as part of his argument that such an explanation is required by the Claims Board's "prior practice," the language he cites from ***Reidinger*** applies independent of any prior practice.  The Claims Board does not respond to Sanders' reliance on ***Reidinger*** in its response brief.  The dissent similarly relegates ***Reidinger*** to a footnote.  ¶89 n. 15.  Neither offers a persuasive reason why the ***Reidinger*** definition of the exercise of discretion does not apply to this administrative discretionary decision subject to judicial review under ch. 227.

Finally, it is consistent with ***Reidinger*** and the canons of statutory construction based on the language of WIS. STAT. § 775.05(4) as a whole that we remand to the Claims Board to explain its exercise of discretion.

*By the Court.*—Order reversed and cause remanded with directions.

Not recommended for publication in the official reports.

No. 2021AP373(D)

¶54 FITZPATRICK, J. (*dissenting*).

¶55 I respectfully dissent.

¶56 The majority opinion errs in stating that the State of Wisconsin Claims Board must engage in a detailed explanation and analysis to support its denial of Sanders' request for a report to the legislature regarding compensation in excess of $25,000. The majority opinion recasts the Claims Board into a tribunal that sets a total value, such as a jury would, on claims that come before it pursuant to WIS. STAT. § 775.05(4) (2019-20)[1] and further requires that the Claims Board spell out how the Board determined that exact amount. The unique, two-step statutory mechanism in § 775.05(4) does not require either act of the Claims Board, as shown by the language chosen by the legislature. The majority opinion has grafted onto that statutory subpart a process the legislature has not sanctioned and, as a result, those conclusions in the majority opinion are contrary to policy choices made by the legislature. *See **Mayo v. Wisconsin Injured Patients & Fams. Comp. Fund***, 2018 WI 78, ¶¶26, 40, 383 Wis. 2d 1, 914 N.W.2d 678 (stating that courts "do not reweigh the policy choices of the legislature").

¶57 The majority opinion also errs in giving credence to Sanders' argument that a communication between a Claims Board analyst and the Milwaukee County District Attorney's Office was an improper *ex parte*

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

communication and is a basis to remand this matter to the Claims Board. That argument should be rejected for at least the following reason. Under the applicable law and facts, such communication was not material and did not prejudice Sanders and, therefore, is not a basis to remand this matter to the Claims Board.

¶58 I begin by briefly reviewing subject matters where I agree with the majority opinion.

**Points of Agreement**

¶59 In briefing in this court, many of Sanders' arguments are based on his contention that his right to sue the State of Wisconsin for his imprisonment is denied him because the Claims Board did not send a report to the legislature regarding additional compensation over $25,000 for him pursuant to WIS. STAT. § 775.05(4). Within this argument, Sanders requests outright reversal of the Claims Board decisions and an order from this court requiring the Claims Board to send a report to the legislature specifying an amount of additional compensation for Sanders beyond the $25,000 awarded. These portions of Sanders' briefing in this court do not request a remand for an explanation of the decisions of the Claims Board. I agree with the majority opinion (Majority, ¶43) that Sanders' argument regarding his right to sue the State of Wisconsin fails.

¶60 Sanders also argues that the Claims Board's failure "to make a recommendation or forward" to the legislature a specified amount of additional compensation for him, without explanation, stands in violation of "prior case practices" of the Claims Board. The Claims Board asserts that there is no prior agency practice which requires the Claims Board to explain its reasoning when the Board does not send a report to the legislature regarding additional compensation

for a petitioner beyond $25,000. The majority opinion (Majority, ¶42) agrees with the Claims Board's position regarding a purported prior practice of the Claims Board, and so do I.[2]

## The Majority Opinion Develops Arguments That Sanders Does Not Make

¶61    That leaves one remaining argument from Sanders regarding WIS. STAT. § 775.05(4). In briefing in this court, Sanders contends that the Claims Board erred because it did not explain its reasoning for not forwarding a report to the legislature about additional compensation for him above $25,000. For two reasons, the majority opinion's analysis extends beyond the argument from Sanders on this issue. First, Sanders' contention is based solely on his assertion that, for three other petitions, the Claims Board gave explanations regarding additional compensation above $25,000.[3] As explained above, the "prior case practice" argument from Sanders has been rejected by this panel and cannot support Sanders' argument. Second, this argument from Sanders focuses on

---

[2] The majority opinion (Majority, ¶48 n.4) briefly discusses constitutional arguments that Sanders may intend to make in this court. I agree with the majority opinion that, by failing to address the Claims Board's arguments concerning constitutional issues in his reply brief, Sanders has conceded that the Claims Board's arguments are correct. As an additional reason, any constitutional arguments Sanders intends to make are undeveloped and do not state valid contentions of constitutional law. *See* **State v. Pettit**, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (holding that this court may decline to address undeveloped arguments because we "cannot serve as both advocate and judge").

[3] As examples, briefing from Sanders on this point states the following. "In this case, the Claims Board failed to address Mr. Sanders' claim for additional compensation or forward his claim to the Legislature without a rational basis or explanation, as it has done in prior Innocent Convict compensation case practices." "The Claims Board has failed to explain why it did not address Sanders' additional compensation claim as it did similar claims." "The Claims Board has failed to explain its rationale in its disparate treatment of Mr. Sanders' case claim, from the Hemauer, Stinson, and Avery cases." "As such, WIS. STAT[]. § 227.57(8) governs this issue, and the Claims Board abused its discretion when it deviated in Mr. Sanders' case from its prior practice it had done in the previous case of: Hemauer, Stinson, and Avery."

convincing this court to order the Claims Board to send a report to the legislature that contains a figure regarding additional compensation for him beyond the $25,000 already awarded. I do not discern a developed argument from Sanders requesting a remand to the Claims Board for an explanation and analysis as the majority opinion orders. For those reasons, this argument from Sanders is, at best, undeveloped and I reject it for at least those reasons. *See **Town of Wilson v. City of Sheboygan***, 2020 WI 16, ¶24 n.15, 390 Wis. 2d 266, 938 N.W.2d 493 (stating that it is not up to an appellate court to make or develop arguments on behalf of a party); ***Yorgan v. Durkin***, 2006 WI 60, ¶13 n.4, 290 Wis. 2d 671, 715 N.W.2d 160 ("The proper procedure is to have an issue raised, briefed, and argued by the parties before deciding it.").

¶62 In addition, other reasons for my disagreement with my colleagues in the majority will be addressed.

## Limited Scope of Review

¶63 I now consider the limited scope of this court's review of the decisions of the Claims Board.[4] The provisions of WIS. STAT. ch. 227 concern administrative procedures and generally do not apply to the proceedings of the Claims Board. WIS. STAT. § 227.03(5) ("This chapter [(ch. 227)] does not apply to proceedings of the claims board, except as provided in [WIS. STAT. §] 775.05(5) ...."). That one exception states: "The findings and the award of the claims board shall be subject to review as provided in ch. 227." Sec. 775.05(5).

---

[4] The members of the State of Wisconsin Claims Board are from the two other branches of state government: a representative designated by the Governor; a representative of the Department of Administration; a representative of the Department of Justice; and Chairpersons of the Senate and Assembly Committees on Finance (or their designees). WIS. STAT. § 15.105(2).

¶64    It is Sanders' burden to establish that the Claims Board decision should be modified or reversed.  ***Bethards v. DWD, Equal Rts. Div.***, 2017 WI App 37, ¶16, 376 Wis. 2d 347, 899 N.W.2d 364 ("In all events, the petitioner … bears the burden of demonstrating that the agency decision should be modified or set aside.").  Consistent with that, and also of importance to our review, is WIS. STAT. § 227.57(2), which states:  "Unless the court finds a ground for setting aside, modifying, remanding or ordering agency action or ancillary relief under a specified provision of this section, it shall affirm the agency's action."  Sec. 227.57(2).

¶65    In these circumstances, the potential bases for our judicial review under WIS. STAT. § 227.57 are the following:  § 227.57(5) ("The court shall set aside or modify the agency action if it finds *that the agency has erroneously interpreted a provision of law* and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action *under a correct interpretation of the provision of law*.") (emphasis added); and § 227.57(8) ("The court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is outside the range of discretion *delegated to the agency by law … or is otherwise in violation of a constitutional or statutory provision*.") (emphasis added).  Both statutory subparts require this court to interpret the applicable portion of a Claims Board statute, WIS. STAT. § 775.05(4), to determine the authority granted to the Claims Board and the actions required of the Claims Board.

¶66    That necessary focus on WIS. STAT. § 775.05(4) is confirmed by WIS. STAT. § 227.02 which states:  "Compliance with this chapter [(WIS. STAT. ch. 227)] does not eliminate the necessity of complying with a procedure required by another statute."  Further, the statutory language in § 775.05(4) is critical

because an agency, such as the Claims Board, has only those powers granted by the legislature. *See* **Koschkee v. Taylor**, 2019 WI 76, ¶20, 387 Wis. 2d 552, 929 N.W.2d 600 ("As we have explained, an agency's powers, duties and scope of authority are fixed and circumscribed by the legislature …." (internal quotation marks and quoted source omitted)).

¶67 The majority opinion states that the Claims Board must engage in an "explanation" and "analysis" "supporting" the Claims Board's "determination whether" the $25,000 award from the Claims Board "is or is not adequate." (Majority, ¶¶1, 30, 32, 34, 50, 52). It is solely the language in WIS. STAT. § 775.05 that allows Sanders the opportunity to obtain compensation through the Claims Board. Therefore, the analysis must concentrate on the unique statutory language and procedures set forth by the legislature for this situation. For the following reasons, I disagree with the majority opinion's conclusions.

**Decisions of the Claims Board**

¶68 For context, I pause to repeat the pertinent decisions of the Claims Board. In its initial decision, the Claims Board awarded the maximum amount of compensation to Sanders allowed pursuant to its own authority under WIS. STAT. § 775.05(4), $25,000, and stated: "Accordingly, the Board further concludes that compensation in the amount of $25,000 shall be awarded from the Claims Board appropriation [WIS. STAT.] § 20.505(4)(d)."

¶69 In addressing Sanders' petition for rehearing, the Claims Board Chair, on behalf of the Board, denied Sanders' petition and stated in relevant part:

> WIS[CONSIN] STAT. § 775.05(4) states, in part:
>
> > "**If** the claims board finds the amount it is
> > able to award is not adequate compensation it shall

> submit a report specifying an amount which it considers adequate to the chief clerk of each house of the legislature, for distribution to the legislature under [WIS. STAT. §] 13.172(2)." (Emphasis added [by Claims Board].)

The Claims Board's decision clearly states that the board unanimously voted to award compensation in the amount of $25,000. Because the Board did not conclude that the amount which it was able to award was "not adequate compensation," it is not required to submit a report to the legislature "specifying an amount which it considers adequate." Therefore, the absence of an explicit statement regarding the request for additional damages does not render the Board's decision incomplete.[5]

## The Unique Statutory Mechanism in WIS. STAT. § 775.05(4)

¶70 The legislature "has established a mechanism for [the] compensation" of persons in Sanders' position. *Turnpaugh v. State Claims Bd.*, 2012 WI App 72, ¶3, 342 Wis. 2d 182, 816 N.W.2d 920. The applicable language in WIS. STAT. § 775.05(4) states that, once the Claims Board finds the petitioner is eligible for compensation:

> [T]he claims board shall find the amount which will equitably compensate the petitioner, not to exceed $25,000[6] …. If the claims board finds that the amount it is able to award is not an adequate compensation it shall submit a report specifying an amount which it considers adequate to the chief clerk of each house of the legislature, for distribution to the legislature under [WIS. STAT. §] 13.172 (2).

---

[5] The majority opinion at ¶¶22 and 33 concludes that the Claims Board did not "address[]" Sanders' request for additional compensation over $25,000. That is incorrect as shown in the order of the Claims Board.

[6] Deleted from this quote is language regarding a rate of compensation of not greater than $5,000 per year and a sentence concerning amounts for attorney fees, costs and disbursements. Those are not at issue in this appeal.

Sec. 775.05(4).

¶71    That statutory subpart sets forth a two-step mechanism, with discrete processes, for the Claims Board.  In the first step, the Claims Board is required to find the amount which will "equitably compensate" Sanders, and that compensation must be within the range from $0 to $25,000.  WIS. STAT. § 775.05(4).  Such statutory language establishes that the legislature has not tasked the Claims Board in this first step to determine, as a jury would, the total value of a petitioner's claim.[7]  Instead, the Claims Board is only given the task of awarding compensation to a petitioner within a range of $0 to $25,000, and the Board is not to consider or determine in this first step a request of a petitioner for compensation in excess of $25,000.[8]

¶72    The second step in this unique process is a mechanism set forth in the final sentence of WIS. STAT. § 775.05(4).  An aspect of the second step bears mentioning.  It is not within the authority of the Claims Board, or a court, to require that a petitioner such as Sanders be given any compensation in excess of $25,000.  The legislature has reserved that particular decision to itself and, critical to the analysis, the legislature has enacted a specific procedure it has concluded is appropriate and essential for that purpose.

¶73    As WIS. STAT. § 775.05(4) describes, in this second step, the legislature restricts what is required of the Claims Board and states that, "[i]f the

[7] The majority opinion (Majority, ¶27) agrees that, in this first step, WIS. STAT. § 775.05(4) "cabins" the Claims Board's determination.

[8] Sanders' arguments in this court focus exclusively on the second step of this statutory mechanism.  Nonetheless, in a later section of this dissent, I will discuss again this first step.

claims board finds that the amount it is able to award [($25,000)] is not an adequate compensation," then, and only then, does the remainder of that sentence come into play. I agree with the circuit court and the Claims Board that the Board is required to send a report to the legislature "[i]f," and only if, "the claims board finds that the [maximum] amount it is able to award [to a petitioner on its own authority, $25,000] is not an adequate compensation." Sec. 775.05(4).[9]

¶74 The legislature's choice of the word "if" denotes the clear direction that the remainder of the sentence concerning a report to the legislature is conditional, and the Claims Board need do nothing further to satisfy WIS. STAT. § 775.05(4) unless it first decides that $25,000 is not adequate compensation for a petitioner.

¶75 The U.S. Supreme Court has interpreted the meaning of the word "if" in a statute. *Dodd v. United States*, 545 U.S. 353, 358-59 (2005). In that case the court interpreted 28 U.S.C. § 2255, ¶6(3),[10] which set the period of limitation for a federal prisoner to request that their sentence be vacated, and provided in relevant part: "A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from … the date on which the right asserted was initially recognized by the Supreme Court, **if** that right has been newly recognized by the Supreme Court and made retroactively applicable to

---

[9] If the remainder of the sentence is triggered, the Claims Board must take exactly one action: "submit a report" to the legislature "specifying an amount which [the Claims Board] considers adequate." WIS. STAT. § 775.05(4). The contents of the report—if step two is reached at all—are minimal and the statute only mandates that the report contain a specification of "an amount." *Id.*

[10] The provision considered in *Dodd v. United States*, 545 U.S. 353 (2005), is now found at 28 U.S.C. § 2255(f)(3).

cases on collateral review." *Id.* at 356-57 (emphasis added). The Court held that the term "if" imposes a "condition on the applicability of this subsection" and concluded that the prisoner "may take advantage of the date in the first clause of ¶6(3) *only if* the conditions" in the statute are met. *Id.* at 358-59 (emphasis added).

¶76 In *Boatman v. Hardee*, 254 So. 3d 604 (Fla. Dist. Ct. App. 2018), the Florida District Court of Appeal considered the following statutory language regarding election law: "If a candidate's check is returned by the bank for any reason, the filing officer shall immediately notify the candidate …." *Boatman*, 254 So. 3d at 608. The court referenced the Merriam-Webster definition of the word "if" and stated that the word "if" is conditional. *Id.* "By conditioning that a cashier's check may be used '[i]f the candidate's check is returned by the bank,' … the statute clearly contemplates a process by which a cashier's check may *only* be used on the condition that the campaign check is returned by the bank." *Id.* at 608-09 (emphasis added).

¶77 In *Community Hospitals of Indiana, Inc. v. Von Arx*, 700 N.E.2d 253 (Ind. Ct. App. 1998), the Indiana Court of Appeals interpreted the following statutory language concerning payment for a commitment:

> **If** the comfort and the care of an individual are not otherwise provided:
>
> (1) from the individual's estate;
>
> (2) by the individual's relatives or friends; or
>
> (3) through the financial assistance from the division of family and children or a county office; the court may order the assistance furnished and paid for out of the general fund of the county.

*Community Hosps.*, 700 N.E.2d at 257 (emphasis added).  The court concluded that "the statutory language in question creates a condition precedent for financial assistance from the general fund *only if* aid is not otherwise supplied or furnished by [a person's] relatives, friends, the division of family and children, or a county department."  *Id.* (emphasis added).

¶78     In addition, courts may consider dictionary definitions in interpreting statutes.  "A dictionary may be utilized to guide the common, ordinary meaning of words."  *Noffke ex rel. Swenson v. Bakke*, 2009 WI 10, ¶10, 315 Wis. 2d 350, 760 N.W.2d 156 (citing *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶53, 271 Wis. 2d 633, 681 N.W.2d 110).  Two dictionary definitions of the word "if" are relevant.  *If*, MERRIAM-WEBSTER ONLINE DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/if  (last visited June 2, 2022) (defining "if" as meaning "in the event that," "allowing that," "on the assumption that," and "on condition that"); *If*, OXFORD ENGLISH DICTIONARY ONLINE, *available at* https://www.oed.com/view/Entry/91152 (last visited June 2, 2022) (defining "if" as "[i]ntroducing a clause of condition or supposition" and meaning "on condition that," "given or granted that," "in (the) case that," and "supposing that").

¶79     By the legislature using the word "if," and therefore meaning "only if," the second step in this mechanism does not, as the majority opinion concludes, mandate an explanation and analysis of the Claims Board's reasoning.  If the legislature wanted an explanation and analysis from the Claims Board in the second step as to why $25,000 is adequate compensation, the legislature would have stated that.  It did not, and that makes all the difference.

¶80 The majority opinion's conclusions demand an explanation and analysis from the Claims Board regarding how much a petitioner's claim is worth and, after that, an application of the first and second steps of WIS. STAT. § 775.05(4) just described. Those majority opinion conclusions are untethered to the language of § 775.05(4) and, as a result, are flawed. "[C]ourts should not add words to a statute to give it a certain meaning." *Fond du Lac Cnty. v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989); *see State v. Wiedmeyer*, 2016 WI App 46, ¶13, 370 Wis. 2d 187, 881 N.W.2d 805 ("It is not up to the courts to rewrite the plain words of statutes."); *Dawson v. Town of Jackson*, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write.").

¶81 The language of this statute has been, for all practical purposes concerning this appeal, the same for over seventy-five years. *See Le Fevre v. Goodland*, 247 Wis. 512, 19 N.W.2d 884 (1945).[11] However, for reasons already

---

[11] In the 1945 version of the statutes, WIS. STAT. § 285.05 read as follows:

> **Compensation for innocent convicts.** (1) The governor and the director of the state department of public welfare constitute a commission for the relief of innocent persons who have been convicted of crime.
>
> (2) Any person who after May 10, 1913 shall serve a term of imprisonment under conviction for a crime against the state, of which crime he claims to be innocent, or any person who has been pardoned on the ground of innocence and whose imprisonment shall thereby be shortened, may petition the commission for compensation for such wrongful imprisonment.

(continued)

(3) After hearing the evidence on the petition, the commission shall find either that it is clear beyond a reasonable doubt that the petitioner was innocent of the crime for which he suffered imprisonment, or that it is not clear beyond a reasonable doubt that he was innocent. Upon the hearing the record of the trial in which the conviction was had may be presented to the commission for the purpose of enabling it to understand the situation, but the finding of the commission shall be based only on such evidence or circumstances as have been discovered or have arisen since conviction.

(4) If the commission shall find that the petitioner was innocent and that he did not by his act or failure to act contribute to bring about the conviction and imprisonment for which he seeks compensation, the *commission shall find the amount which will compensate him for his wrongful imprisonment but not to exceed five thousand dollars and at a rate of compensation not greater than fifteen hundred dollars per year for the imprisonment. If the commission shall find that the amount it is able to award will not be an adequate compensation it shall report an amount to the legislature which it shall deem adequate.*

(5) *The commission shall keep a complete record of its proceedings in each case and of all the evidence. The findings and the award of the commission shall be subject to review as provided in [*WIS. STAT. ch.*] 227.*

WIS. STAT. § 285.05 (1945) (emphasis added).

WISCONSIN STAT. § 285.05 was renumbered in 1979 by 1979 Wis. Act 32, § 53 to WIS. STAT. § 775.05. Section 775.05 was amended by 1987 Wis. Act 186, § 81 as follows:

SECTION 81. 775.05 (4) of the statutes is amended to read:

(continued)

discussed and for reasons I discuss next, no court has interpreted WIS. STAT. § 775.05(4) as the majority opinion does now.

¶82 A closely related statute concerning the workings of the Claims Board supports my conclusions. *See* **Kalal**, 271 Wis. 2d 633, ¶46 (holding that context is important in interpreting statutes; thus, statutory language must be interpreted in relation to surrounding and closely related statutes). With the exception of sub. (2), WIS. STAT. § 16.007 concerns claims "which are referred to the [Claims Board] by the department."[12] For those claims referred to the Claims Board by that department, the legislature has required that "[t]he [Claims Board] shall report its findings and recommendations, on all claims referred to it, to the legislature." Sec. 16.007(5). This statutory language confirms that, when the

---

775.05 (4). If the claims board finds that the petitioner was innocent and that he or she did not by his or her act or failure to act contribute to bring about the conviction and imprisonment for which he or she seeks compensation, the claims board shall find the amount which will equitably compensate the petitioner, not to exceed $25,000 and at a rate of compensation not greater than $5,000 per year for the imprisonment. Compensation awarded by the claims board shall include any amount to which the board finds the petitioner is entitled for attorney fees, costs and disbursements. If the claims board finds that the amount it is able to award is not an adequate compensation it shall submit a report specifying an amount which it considers adequate to the chief clerk of each house of the legislature which it deems adequate, for distribution to the legislature under s. 13.172 (2).

1987 Wis. Act 186, § 81.

The pertinent language of WIS. STAT. § 775.05(4) since at least 1945 has been identical other than the addition of the term "equitably" immediately prior to the word "compensate."

[12] "[D]epartment" in WIS. STAT. ch. 16 means the Department of Administration. WIS. STAT. § 16.002(1). There is no basis to conclude that Sanders' claim has been referred to the Claims Board by that department.

legislature wants an explanation and analysis (in the form of "findings and recommendations") on all of certain types of claims that the Claims Board considers, it is fully capable of stating that. Such process is distinct from the second step in WIS. STAT. § 775.05(4) because the Claims Board does not send even the minimal "report" to the legislature (as previously described) unless the Board determines that $25,000 is not adequate compensation. Here, the majority opinion demands of the Claims Board an explanation and analysis that the legislature has decided not to require.

¶83 In addition, the Claims Board is not required to prepare findings of fact and conclusions of law regarding its reasoning as the majority opinion, in effect, demands. An example of a provision of WIS. STAT. ch. 227 that does not apply to the proceedings of the Claims Board is WIS. STAT. § 227.47(1)[13] which states in pertinent part:

> [E]very proposed or final decision of an agency … following a hearing and every final decision of an agency shall be in writing accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise and separate statement of the ultimate conclusions upon each material issue of fact without recital of evidence.

Sec. 227.47(1). The legislature could have required that the procedures set out in ch. 227 apply to the Claims Board, including the statutory subpart just quoted. That the legislature exempted the Claims Board from this requirement supports the conclusion that, in the second step in WIS. STAT. § 775.05(4), the Claims Board need not prepare a detailed explanation and analysis concerning its decision that $25,000 is adequate compensation.

---

[13] As discussed earlier, the provisions of WIS. STAT. ch. 227 do not apply to proceedings of the Claims Board other than for judicial review. *See* WIS. STAT. § 227.03(5).

**Other Errors in the Majority Opinion Analysis**

¶84    I suggest that there are other errors in the majority opinion that I now discuss.

¶85    Paragraph 49 of the majority opinion states that any reliance on the explicit legislative directive that the Claims Board must take further action *only* "if" the Claims Board decides that the $25,000 it is able to award is not adequate compensation "begs the question."  I disagree.  The statutory language is the touchstone of the analysis and should not be shunted to the side.

¶86    To the extent the majority opinion considers the language of WIS. STAT. § 775.05(4), it misses the mark.  Paragraphs 28-29 of the majority opinion attempt to link the two steps set out in § 775.05(4).  However, the steps are separate and distinct and require separate action (or inaction) by the Claims Board consistent with the language chosen by the legislature.  That each step concerns the same general subject matter—*i.e.*, the claim of a petitioner—does not lead to this conclusion drawn by the majority opinion.

¶87    The majority opinion also relies on authorities that are distinguishable from the specific language of WIS. STAT. § 775.05(4) enacted by the legislature and the mechanisms mandated by the legislature.

¶88    Paragraph 19 of the majority opinion is an example of how the majority attempts to graft onto WIS. STAT. § 775.05(4) requirements that are not in that statutory subpart.  The opinions relied on in that paragraph concern common law duties and equitable authority of courts rather than the applicable statutory

language.[14] At any rate, an opinion relied on by the majority states that a court's equitable authority must be exercised consistent with pertinent statutes. *See GMAC Mortg. Corp. v. Gisvold*, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998) (a court's equitable authority is constrained by "statutory mandate"). Put another way, the use of the term "equitable" does not create a free-wheeling tool that calls for agencies and courts to ignore statutes.

¶89    Similarly, the opinions relied on in ¶20 of the majority opinion concern common law certiorari standards and common law principles that apply regarding an agency decision to deny a continuance.[15] The analysis in those opinions does not consider the question of what is required of the Claims Board at this second step of the process as set forth in WIS. STAT. § 775.05(4).

¶90    In sum, and for those reasons, I disagree with the majority opinion conclusions regarding the statutory process required of the Claims Board.

### The Claims Board's Award of $25,000

¶91    Sanders does not dispute that the amount awarded to him by the Claims Board is the maximum amount that the Claims Board has authority to award pursuant to the first step of WIS. STAT. § 775.05(4). Sanders does not argue that, within the first step, the Claims Board was required to explain and analyze

---

[14] *See Forest Cnty. v. Goode*, 219 Wis. 2d 654, 683, 579 N.W.2d 715 (1998); *Nationstar Mortg. LLC v. Stafsholt*, 2018 WI 21, ¶23, 380 Wis. 2d 284, 908 N.W.2d 784; *GMAC Mortg. Corp. v. Gisvold*, 215 Wis. 2d 459, 480, 572 N.W.2d 466 (1998); *Klawitter v. Klawitter*, 2001 WI App 16, ¶8, 240 Wis. 2d 685, 623 N.W.2d 169.

[15] *See Reidinger, O.D., v. Optometry Examining Bd.*, 81 Wis. 2d 292, 297, 260 N.W.2d 270 (1977); *Argonaut Ins. Co. v. LIRC*, 132 Wis. 2d 385, 391-92, 392 N.W.2d 837 (Ct. App. 1986).

why it awarded the maximum amount that the Claims Board had authority to award. Instead, Sanders' arguments in this appeal focus solely on the second step of § 775.05(4), what he refers to as his "additional compensation claim."

¶92 Nonetheless, if one assumes for a moment that, at the first step of the Claims Board decision under WIS. STAT. § 775.05(4), the Board was required to give an "explanation" and "analysis," neither Sanders nor the majority opinion contend that such an explanation will result in any change in the amount Sanders is awarded under the authority granted to the Claims Board in the first step of § 775.05(4). Accordingly, any such error would be harmless.

¶93 The harmless error doctrine applies to administrative proceedings. This is borne out in case law. Our supreme court, in a review of an administrative agency decision, has referred to purported error of an agency as "harmless procedural error." *See Responsible Use of Rural and Agric. Land (RURAL) v. PSC*, 2000 WI 129, ¶47, 239 Wis. 2d 660, 619 N.W.2d 888 ("If, however, there was any error in applying [Sec. 96 of 1997 Wis. Act 204]'s expedited procedures considering the date or terms of the Power Purchase Agreement, or the capacity of the proposed project, that error would have been harmless procedural error.").[16] Further, the burden is on the party claiming error to establish that the agency error is "prejudicial." *Id.*, ¶48 ("The burden is on RURAL to establish that a claimed procedural error is prejudicial." (citing *Nu-Roc Nursing Home, Inc. v. DHSS*, 200 Wis. 2d 405, 418, 546 N.W.2d 562 (Ct. App. 1996))).

---

[16] This point regarding harmless error in agency judicial review is confirmed by WIS. STAT. § 227.57(4), which requires "material error" before a court remands to an agency for "further action."

¶94 In addition, in ***Houslet v. DNR***, 110 Wis. 2d 280, 329 N.W.2d 219 (Ct. App. 1982), the DNR denied Houslet's application to dredge a lake. ***Houslet***, 110 Wis. 2d at 282. The DNR's initial denial of Houslet's application was upheld by an independent hearing examiner after an evidentiary hearing. ***Id.*** Houslet appealed to the circuit court for Wis. Stat. ch. 227 review, and the circuit court held that the examiner erred in "failing to make a finding concerning the potential pollutant effect of the proposed dredging." ***Id.*** at 283. The circuit court also held that the examiner erred in "concluding as a matter of law that part of the area which the applicant desires to dredge is a wetland area" according to wetlands regulations. ***Id.*** The circuit court remanded the matter to the DNR for reconsideration based on these holdings. ***Id.*** at 284.

¶95 On appeal, this court reversed the circuit court and concluded that the examiner properly denied the application under the wetlands regulations. ***Id.*** at 281. This court also held that the DNR's failure to make findings as to potential pollutant effects did not require a remand to the DNR: "A remand to the department is not necessary in this case, however, because we have concluded that the contract at issue was properly rejected under the wetlands regulation." ***Id.*** at 291. Moreover, this court explicitly stated: "We hold that the … [DNR's] failure to make a specific finding concerning the potential pollutant effects of the dredging project was harmless error which does not warrant remand to the department for reconsideration." ***Id.*** at 281.[17]

---

[17] The majority opinion is correct that the Claims Board brief in this court does not give a "pin cite" to ***Houslet v. DNR***, 110 Wis. 2d 280, 329 N.W.2d 219 (Ct. App. 1982). (*See* Majority, ¶51 n.5). Nonetheless, the Claims Board's discussion of ***Houslet*** is correct.

¶96 Those opinions stand for the unremarkable proposition that, in judicial review of an agency decision, appellate courts do not remand for further explanation from the agency if such an explanation will not change the result.

¶97 In sum, any possible error in the Claims Board not explaining why, pursuant to its own authority through the first step of WIS. STAT. § 775.05(4), it awarded the maximum amount of $25,000 to Sanders is harmless and caused Sanders no prejudice. Sanders received all the Claims Board could give him under its own authority granted by the legislature. A remand to explain why, under the first step of § 775.05(4), the Claims Board gave him that maximum amount will not change the result.

**Communication with Milwaukee County District Attorney's Office**

¶98 Sanders argues that a communication between a Claims Board analyst and the Milwaukee County District Attorney's Office —of which Sanders was not aware until after the initial decision of the Claims Board—renders the Claims Board proceedings "invalid" and is a basis for this court to reverse the decision of the Claims Board. I disagree with the majority opinion's direction (Majority, ¶48) that the Claims Board "may" "articulate on the record whether and how it considered either or both of the District Attorney's Office's statements." Rather, I conclude for the following reasons that Sanders' argument fails.

¶99 Sanders' argument states that only one set of communications between the Claims Board analyst and the Milwaukee County District Attorney's Office "is the subject of this appeal" and, accordingly, I focus on those two emails. The Claims Board's analyst sent an email to the Milwaukee County District Attorney's Office which stated: "DA Chisholm's April 1, 2019, response to the Claims Board stated that the Milwaukee DA's Office 'does not oppose'

20

Mr. Sanders' petition. To clarify, are you saying that the DA's Office does not oppose payment of $5,754,965 to Mr. Sanders? Please advise." The District Attorney's Office responded through the Milwaukee County Chief Deputy District Attorney who wrote:

> [District Attorney Chisholm's] letter of April 1, 2019, intends to express our general support for Mr. Sanders' petition for compensation. We originally saw his form that requested the statutory maximum amount of $25,000, which we support. Regarding his other claims for damages, which appears to have varied over the course of this process, we are not taking any position on those claims, as we understand the claims board is better situated to make that determination.

¶100 Consistent with that response, the Claims Board, in its initial decision, stated: "The [Milwaukee County] DA's Office takes no position on Mr. Sanders' claims for additional damages and believes the Claims Board is better suited to make a determination regarding those damages."

¶101 Sanders filed a petition for rehearing with the Claims Board, in part, because the April 1, 2019 letter from Milwaukee District Attorney Chisholm stated that the Milwaukee County District Attorney's Office "does not oppose [Sanders'] petition." Sanders asserted that there was an error in the initial decision as, at the time, he was not aware that the Milwaukee County District Attorney's Office had clarified its position in the above-quoted email. The Claims Board concluded that a rehearing need not be granted on that basis because Sanders' assertion was "not supported by the record." The Claims Board stated that its initial decision was correct in that the Milwaukee County District Attorney's Office took no position on Sanders' claim for additional damages beyond $25,000 and, as a result, there was no material error of fact as Sanders contended. In briefing in this court, Sanders contends that this was an improper ex parte

21

communication between the Claims Board and the Milwaukee County District Attorney's Office, and we should reverse the Claims Board's decision on that basis.

¶102 The Claims Board argues that Sanders has not established that any prohibition concerning ex parte communications applies to the Claims Board's review of his petition. Courts consider applicable statutes to determine whether ex parte communications are prohibited in an administrative proceeding. *See Marder v. Board of Regents of Univ. of Wis. Sys.*, 2005 WI 159, ¶25, 286 Wis. 2d 252, 706 N.W.2d 110. Nothing in the applicable statutes leads to the conclusion that ex parte communications are barred in proceedings of the Claims Board.

¶103 WISCONSIN STAT. § 227.50 concerns "[e]x parte communications in contested cases." Sec. 227.50. However, the provisions of § 227.50(1) concerning ex parte communications in administrative proceedings "come[] into play only if the contested case provisions of [WIS. STAT.] § 227.42(1) apply." *Marder*, 286 Wis. 2d 252, ¶24. Sanders does not argue that his petition was a "contested case" in the Claims Board pursuant to § 227.42. Further, as noted earlier, WIS. STAT. § 227.03(5) states that WIS. STAT. ch. 227 does not apply to proceedings of the Claims Board except for "review as provided in ch. 227." WIS. STAT. § 775.05(5).

¶104 Sanders offers two arguments that ex parte communications are prohibited in Claims Board proceedings, but each fails. Sanders relies on WIS. STAT. § 16.007(2) in that it refers to "official notice of any generally recognized fact or established technical or scientific fact." *See* § 16.007(2). But, Sanders gives no viable contention linking that phrase to ex parte communications. Sanders also relies on the definition of "ex parte communication" from Black's

22

Law Dictionary. The majority opinion (Majority, ¶47) repeats that contention but does not explain how or why a definition in Black's Law Dictionary establishes a basis to conclude that the Claims Board is prohibited from receiving ex parte communications, and I discern no such basis.

¶105 Making an argument that Sanders does not make regarding these two emails, the majority opinion relies on due process considerations. *See* Majority, ¶45. Of note, the case law quoted in the majority opinion states that the pertinent information must be "material" to potentially violate due process considerations. *Marder*, 286 Wis. 2d 252, ¶28. In the same vein, and as Sanders concedes, complaints regarding ex parte communications require Sanders to establish that any error was "material" and "prejudiced" Sanders. *Seebach v. PSC*, 97 Wis. 2d 712, 721, 295 N.W.2d 753 (Ct. App. 1980) ("The instant petitioners have not demonstrated that receipt of the petition prejudiced them to a material degree. They bear this burden of proof.").

¶106 I next consider Sanders' assertions of materiality and prejudice from the communication between the Claims Board policy analyst and the Milwaukee County District Attorney's Office. Even if one assumes that due process considerations come into play, Sanders' arguments fail.

¶107 First, Sanders contends that "the Claims Board Program & Policy Analyst[] held improper influence on the Claims Board's decision making." In an attempt to support that argument, Sanders asserts: "Yet, [the analyst]'s continued contact with [the Chief Deputy District Attorney] by email, without notice to Mr. Sanders, shows that she occupied a position adverse to Mr. Sanders' interest." Apparently, this is an assertion of bias against Sanders by the Claims Board members. I agree with the Claims Board's argument in this court that "Sanders

fails to connect any dots to explain how or why there could have been any 'improper influence' or how or why that would show prejudice."

¶108   Second, Sanders argues, "[i]t must be noted that according to the Claims Board's rules and/or procedures, once the DA's office declined to appear at the hearing and stated it had nothing further to add, the Claims Board should have decided the merits of the case based on the written materials submitted." Sanders' argument boils down to the following.  According to Sanders, the Claims Board should have made a decision without relying on clarification from the Milwaukee County District Attorney's Office.  The necessary premise of Sanders' argument is that the initial letter to the Claims Board from District Attorney Chisolm regarding Sanders' petition was a stipulation or concession from the District Attorney that the Claims Board should award millions of dollars to Sanders, and the Claims Board was bound by that stipulation or concession. According to Sanders, by not holding the District Attorney to an ambiguous statement in the initial letter from him, this changed the result to his detriment. Sanders' argument has no basis in fact or law and must be rejected.

¶109   Third, Sanders argues as follows:

> Furthermore, in seeking clarification of the District Attorney's office position concerning additional compensation, [the analyst] nor the Claims Board ever contacted DA Chisolm, the author of the April 1, 2019 letter which was in question.
>
> The importance of contacting DA Chisolm to clarify his position was imperative in that it was initially Chisolm who stated on the record that the Milw. County District Attorney's office did not oppose Sanders' claim; thus, if the DA's office position had changed, which clearly it did as [the Chief Deputy District Attorney's] position was different than Chisolm's April 1, 2019 position, then it should have either been DA Chisolm to communicate such

change, or at the very least, indication that Chisolm was in fact contacted regarding such change.

Sanders' argument continues:

> In his response to [the analyst], [the Chief Deputy District Attorney] made statements that need to be clarified and explained. [The Chief Deputy District Attorney] stated: "*[District Attorney Chisolm]'s letter of April 1, 2019, intends to express our general support for Mr. Sanders' petition for compensation. We originally saw his form that requested the statutory maximum amount of $25,000, which we support. Regarding his other claims for damages, which appear to have varied over the course of this process, we are not taking any position on those claims.*" Sanders argues this statement is factually false and needs clarification.

¶110 Sanders asserts that District Attorney Chisolm supported Sanders' claim for millions of dollars but the Chief Deputy District Attorney, when asked, unilaterally changed the position of the Milwaukee County District Attorney's Office on compensation for Sanders in excess of $25,000. I agree with the Claims Board that Sanders' argument fails and is not supported by the record. Nothing in any submission, and nothing that can be reasonably drawn from the record and the Chief Deputy District Attorney's response, shows that the statements from the Chief Deputy District Attorney about the District Attorney's position were "false."

¶111 In sum, Sanders' argument that a communication from a Claims Board analyst seeking clarification about the Milwaukee County District Attorney's Office's position, and a response, is a basis to reverse the decision of the Claims Board fails. Sanders has shown no basis to conclude that such communications were material or caused him prejudice.

## CONCLUSION

¶112   For those reasons, I respectfully dissent and would affirm the order of the circuit court that affirmed the decisions of the Claims Board.